UNITED STATES of America, Appellee,

v.

**William Mark RUBIN, Appellant.**

No. 86–5178.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 2, 1987.

Decided Jan. 6, 1988.

Rehearing Denied Feb. 4, 1988.

Jack S. Nordby, Minneapolis, Minn., for appellant.

Thomas B. Heffelfinger, Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

William Rubin appeals his conviction of ten counts of securities fraud brought under 15 U.S.C. §§ 77q(a) and 77x (1982) and 18 U.S.C. § 2 (1982), and two counts of filing a false securities registration statement under 15 U.S.C. § 77x and 18 U.S.C. § 2. On appeal he argues (1) that the district court[1] erred in quashing a subpoena duces tecum served on Ronald Sullivan, an officer of a Cayman Islands bank, and in restricting cross-examination of Sullivan; (2) that the evidence was insufficient to prove criminal acts, criminal knowledge, and criminal intent by Rubin; and (3) that the sentence imposed by the district court was an abuse of discretion. We affirm the judgment of the district court.

Rubin was Chief Executive Officer and Chairman of the Board of Directors of Flight Transportation Corporation and, together with Chief Financial Officer, Janet

1. The Honorable Donald D. Alsop, Chief Judge, United States District Court for the District of Minnesota.

Karki and Financial Controller, Brian Miller, was charged in a twenty-nine count superseding indictment with securities fraud, wire fraud, filing a false bank loan application and filing false securities registration statements. The indictment charged that the fraud involved $51 million obtained from two public offerings of the sale of FTC securities and bank loans. The trial lasted two and a half months and more than fifty-five witnesses testified. Rubin was convicted of twelve of the twenty-eight counts in which he was charged, and acquitted of sixteen. Karki was convicted and did not appeal. Miller pled guilty before trial and testified on behalf of the government at trial. The general counsel of FTC, James McGovern, was charged separately and entered a guilty plea.[2] Gary W. Nelson, FTC's employee in the Cayman Islands, was convicted of two counts of perjury before the grand jury and did not appeal his conviction.

FTC was formed in 1968 and Karki was hired as its bookkeeper in 1976 and soon thereafter allegedly began embezzling from the company and creating false corporate financial records. Rubin was hired by FTC as a consultant in 1977, shortly became manager of the company and finally its president. Rubin suggested to the two owners of FTC that FTC make a public stock offering. The initial offering was made in 1979 and was not the subject of the superseding indictment. The second offering was made in March, 1981 and successfully raised $7 million, and a third offering was made in June, 1982 which raised $24 million. A few days after the June 1982 offering, agents of the FBI and SEC suspended trading of FTC stock, seized its corporate records, and closed down the company. This criminal prosecution, based on the 1981 and 1982 offerings, along with a number of SEC actions and civil lawsuits, followed.[3]

The fraud in this case was based in large part on representations contained in the registration statement and other SEC documents concerning FTC's group air charter operations. The documents represented that FTC was a young growth corporation earning the bulk of its revenues from a group air charter business, in which FTC acted as middleman, renting aircraft from major airlines to groups who would charter the aircraft. The indictment alleged, and substantial evidence was introduced at trial to show, that in fact the group charter operation was virtually nonexistent. Rubin was acquitted of the charges relating to the second offering but convicted of the charges relating to the third offering and sentenced to thirty-five years in prison and assessed a fine of $120,000.

## I.

One of the key issues at trial concerned the revenues of FTC's group air charter operations. According to FTC's financial records, FTC had an account (FTC account # 2, or the "095" account) at Barclay's Bank, Grand Cayman Island, containing some $8 million representing profits from the group air charter operations. The government, through diplomatic channels, arranged for the testimony of Ronald Sullivan, a deputy manager of Barclay's Bank in the Cayman Islands. Operating under strict Caymanian bank secrecy laws, Sullivan could not reveal any bank information without waivers of the secrecy law.[4] The

---

**2.** *See United States v. McGovern*, 822 F.2d 739 (8th Cir.1987).

**3.** For a detailed history of the FTC litigation surrounding the 1982 FTC public offering, see *In re Flight Transp. Corp. Sec. Litig.*, 825 F.2d 1249 (8th Cir.1987); *In re Flight Transp. Corp. Sec. Litig.*, 794 F.2d 318 (8th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 1886, 95 L.Ed.2d 494 (1987); *In re Flight Transp. Corp. Sec. Litig.*, 764 F.2d 515 (8th Cir.1985); *In re Flight Transp. Corp. Sec. Litig.*, 730 F.2d 1128 (8th Cir.1984, *cert. denied,* 469 U.S. 1207, 105 S.Ct. 1169, 84 L.Ed.2d 320 (1985); *SEC v. Flight Transp. Corp.,*

699 F.2d 943 (8th Cir.1983); *SEC v. Flight Transp. Corp.,* 693 F.2d 66 (8th Cir. 1982).

**4.** The law concerning confidential information in the Caymans is governed by the Confidential Relationships (Preservation) Law (Law 16 of 1976) and the Confidential Relationships (Preservation) (Amendment) Law, 1979 (Law 26 of 1979). Pursuant to these laws, all information contained in banking records is "confidential information" and may not be released by a bank without the free and full consent of the holder

court-appointed receiver for FTC signed such waivers with respect to the six FTC accounts at Barclay's, including the critical FTC account # 2. The government filed a motion in limine to limit cross-examination of Sullivan to the several accounts of FTC for which waivers had been obtained and to preclude testimony as to all other accounts for which no waivers had been obtained. The district court conducted an in camera examination of Mr. Sullivan. It carefully weighed the options of limiting the testimony or of refusing to allow the government to call Sullivan as a witness and, after an extensive briefing, entered an order limiting both direct and cross-examination to the six accounts.

Sullivan testified at trial and provided complete records of the six FTC accounts at Barclay's for which waivers had been obtained. The records of FTC account # 2 revealed FTC had never had the $8 million on deposit and, in fact, the maximum balance in the account was only $595.24. Sullivan also identified as forgeries the Barclay's bank statements provided to FTC's auditors. Rubin's counsel thoroughly examined Sullivan within the scope of the direct examination concerning these accounts and then attempted to examine Sullivan on bank accounts of two Cayman Island residents, James Bodden and Steven McField.[5] Sullivan had no waivers for those accounts and when Sullivan appeared to testify, he was served with a subpoena duces tecum to furnish records of these accounts. A motion was filed by Sullivan and the government to quash these subpoenas which, after hearing, was sustained. Rubin filed an affidavit and later testified that Bodden had operated the FTC group charter operation in the Caymans and had stolen millions of dollars in profits by removing the money from FTC's account at Barclay's and altering Barclay records. Bodden was called as a rebuttal witness and testified that neither he nor Cayman Airways had operated any group charter operations with Rubin or FTC. He denied the specific charges made by Rubin, and Rubin's defense counsel was advised that Bodden expressed a willingness to waive secrecy of his own bank records. Rubin's counsel did not cross-examine Bodden about his bank records or ask to have the records disclosed.

### A.

Rubin argues that the district court erred in restricting the cross-examination of Sullivan. He contends that this error violated his constitutional right to confront and cross-examine the witnesses against him.

Cross–examination is the principal means by which the credibility of a witness and the truth of testimony are tested, and therefore must be accorded great respect. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1976). Where the witness the defendant seeks to cross-examine is the chief government witness providing the crucial link in the prosecution's case, the importance of full cross-examination is necessarily increased. *United States v. Nunez*, 668 F.2d 1116, 1121 (10th Cir.1981) (citing *Davis*, 415 U.S. at 317–18, 94 S.Ct. at 1110–11). Nonetheless, courts long have recognized that the trial judge must retain discretion to limit the scope of cross-examination. Fed.R.Evid. 611(b); *Alford v. United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed. 624 (1931); *United States v. Lee*, 743 F.2d 1240, 1249 (8th Cir.1984). Reversal is warranted only when there has been a clear abuse of discretion and a showing of prejudice to the defendant. *Lee*, 743 F.2d at 1249; *United States v. Peyro*, 786 F.2d 826, 828 (8th Cir.1986).

Rubin concedes that there are instances in which the trial court may limit cross-ex-

---

of the account or without an Order of the Grand Court of the Cayman Islands. The release of confidential information without a consent or court order constitutes an offense subjecting the offending bank officer to criminal penalties of a fine not to exceed $10,000.00 or imprisonment not to exceed four years or both.

**5.** Bodden was the founder and former Chairman of the Board of Cayman Airways, an airline carrier for the Cayman Islands. McField was FTC's Cayman Island attorney.

amination, but argues that these limits are based on concerns not present in this case. The district court was correct, however, in finding the situation analogous to those in which a witness invokes his fifth amendment privilege against self-incrimination, and refuses to answer certain questions on cross-examination.[6] The Supreme Court has recognized that cross-examination may be restricted in this instance. *See Davis,* 415 U.S. at 320, 94 S.Ct. at 1112; *Ellis v. Black,* 732 F.2d 650, 656 (8th Cir.1984). A balance must be struck between the witness' fifth amendment privilege against self-incrimination and the defendant's sixth amendment right to cross-examination. *United States v. Singer,* 785 F.2d 228, 242 (8th Cir.1986) (citing *Ellis,* 732 F.2d at 656). In balancing these interests, the court must consider the significance of the witness' testimony and the prejudice to the defendant. Prejudice has generally been found only in those instances in which the defendant is precluded from inquiring into substantive matters about which the witness testified on direct examination. When the defendant is unable to test the truth and accuracy of the witness' direct testimony, his sixth amendment right to cross-examination is violated. *Ellis,* 732 F.2d at 656; *United States v. Humphrey,* 696 F.2d 72, 75 (8th Cir.1982), *cert. denied,* 459 U.S. 1222, 103 S.Ct. 1230, 75 L.Ed.2d 463 (1983); *United States v. Gould,* 536 F.2d 216, 222 (8th Cir.1976), *accord, Nunez,* 668 F.2d at 1122. However, where the witness' invocation of the privilege precludes the defendant from inquiring only as to matters collateral to the direct examination, the defendant's sixth amendment right is not violated. *Ellis,* 732 F.2d at 656; *Humphrey,* 696 F.2d at 75; *Gould,* 536 F.2d at 221;

*accord, United States v. Pelusio,* 725 F.2d 161, 169 (2d Cir.1983).

Thus, the critical inquiry is whether Rubin had the opportunity, on cross-examination, to test the truthfulness of Sullivan's direct testimony. Sullivan's direct testimony concerned only the identification and explanation of the six FTC account records. Rubin's counsel thoroughly examined Sullivan about these records. The restriction did not prevent Rubin's counsel from testing the truthfulness and accuracy of Sullivan's direct testimony. Accordingly, we cannot say that the district court abused its discretion or prejudiced Rubin in limiting the cross-examination of Sullivan.[7]

**B.**

Rubin also contends the district court abused its discretion in quashing the subpoena duces tecum served upon Sullivan. He argues that the order violated his constitutional rights to present his defense and to compulsory process, and that this order, coupled with the order limiting the cross-examination of Sullivan, made it impossible to present his defense.

The district court order quashing the subpoena held that the subpoena was both oppressive and unreasonable. Fed.R.Crim. P. 17(c); *United States v. Nixon,* 418 U.S. 683, 698–703, 94 S.Ct. 3090, 3098–3105, 41 L.Ed.2d 1039 (1974). The court reasoned that if Sullivan produced banking records for those accounts without waivers, he would violate Caymanian law and subject himself to criminal sanctions. Further, the court recognized Rubin could have obtained the records by petitioning the Grand Court of the Cayman Islands, and it was unreasonable to order Sullivan to violate Cayma-

---

**6.** The Supreme Court has not yet determined whether fear of prosecution by a foreign country is sufficient to invoke the fifth amendment. *In re Sealed Case,* 825 F.2d 494, 497 (D.C.Cir. 1987) (per curiam); *see also Zicarelli v. New Jersey Investigation Comm'n,* 406 U.S. 472, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972). Lower courts have been divided on this question. *See, e.g., United States v. (Under Seal),* 794 F.2d 920 (4th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 331, 93 L.Ed.2d 303 (1986) *In re Cardassi,* 351 F.Supp.

1080 (D.Con.1972). It is unnecessary that we consider this issue.

**7.** If any error had been committed in preventing Rubin from fully cross-examining Sullivan, it is harmless beyond a reasonable doubt. The testimony of the remaining government witnesses, particularly James Bodden, provided an overwhelming basis for the jury to return a conviction. *Delaware v. Van Arsdall,* 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

nian law when this procedure, authorized by Caymanian law, was available.

Various courts of appeals have considered the question of whether a United States court can enforce a request for the production of documents from an entity or citizen subject to the laws of another nation which prohibits production. This circuit and a number of other circuits, have employed a balancing test derived from section 40 of the *Restatement (Second) of the Foreign Relations Laws of the United States* (1965).[8] Section 40 provides:

Where two states have jurisdiction to prescribe and enforce rules of law and the rules they may prescribe require inconsistent conduct upon the part of a person, each state is required by international law to consider, in good faith, moderating the exercise of its enforcement jurisdiction, in light of such factors as

(a) vital national interests of each of the states,

(b) the extent and the nature of the hardship that inconsistent enforcement actions would impose upon the person,

(c) the extent to which the required conduct is to take place in the territory of the other state,

(d) the nationality of the person, and

(e) the extent to which enforcement by action of either state can reasonably be expected to achieve compliance with the rule prescribed by that state.

Rubin argues that the district court erred in balancing the competing interests at issue in this case. He urges that by quashing the subpoena the district court deferred to foreign law at the expense of his constitutional rights. He cites several cases in which United States courts have ordered foreign banks to comply with a subpoena despite the fact that compliance required the banks to violate applicable foreign secrecy laws. We reject these arguments.

■ First, we do not believe any violation of Rubin's constitutional rights occurred. Rubin contends that the district court order quashing the subpoena deprived him of the opportunity to present his defense and thus violated his fifth amendment right to due process. To establish a denial of due process, the acts complained of must be of such a quality as necessarily prevents a fair trial. *Lisenba v. California*, 314 U.S. 219, 236, 62 S.Ct. 280, 289, 86 L.Ed. 166 (1941); *United States v. Valenzuela–Bernal*, 458 U.S. 858, 872, 102 S.Ct. 3440, 3449, 73 L.Ed.2d 1193 (1982). Such an absence of fairness is not present here. Rubin testified that James Bodden and Steven McField stole the millions of dollars of group air charter profits. Thus, Rubin's defense was presented to the jury. The fact that Sullivan was not required to provide the specific bank records of these individuals, in light of the strict bank secrecy laws of the Cayman Islands, cannot be held to violate Rubin's due process rights. *Id.*

■ Similarly, there was no violation of Rubin's sixth amendment right to compulsory process. To establish such a violation, more than a mere absence of testimony is necessary. *Valenzuela–Bernal*, 458 U.S. at 867, 102 S.Ct. at 3447 (citing *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967)). There must be a showing that the evidence is both material and favorable to the petitioner's defense. *Valenzuela–Bernal*, 458 U.S. at 867, 102 S.Ct. at 3447; *United States v. Holtzen*, 718 F.2d 876, 878 (8th Cir.1983) (per curiam). Even if we concede that the records were material, there was no showing that the records would be favorable to Rubin's defense. As the district court noted, the records provided limited information; they contained only the date, type and amount of transaction, and the resultant account balance. The records did not reflect from

**8.** *See, e.g., In Re Societe Nationale Industrielle Aerospatiale*, 782 F.2d 120 (8th Cir.1986), *vacated on other grounds,* —— U.S. ——, 107 S.Ct. 2542, 96 L.Ed.2d 461 (1987); *United States v. Davis*, 767 F.2d 1025, 1034–35 (2d Cir.1985); *In Re Grand Jury Proceedings Bank of Nova Scotia*, 740 F.2d 817, 827–29 (11th Cir.1984), *cert. denied,* 469 U.S. 1106, 105 S.Ct. 778, 83 L.Ed.2d 774 (1985); *United States v. First National Bank of Chicago*, 699 F.2d 341, 345–47 (7th Cir.1983); *United States v. Vetco, Inc.*, 691 F.2d 1281, 1288–91 (9th Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981).

whom the money was received or where the money was transferred. Due to this limited information, Rubin was denied only the opportunity to compare the FTC and Bodden account balances. It is conceivable that by comparing the account records Rubin could have helped his defense by showing decreases in the FTC account followed by corresponding increases in the Bodden accounts. However, the largest balance in the FTC account # 2 was only $595.24.[9] Thus, not even this tenuous inference could have been drawn from disclosure of the Bodden account records. Accordingly, the district court order quashing the subpoena did not deny Rubin his sixth amendment right to compulsory process.

The cases cited by Rubin ordering foreign banks to comply with a subpoena, are not dispositive. In those cases the government was seeking the bank records of United States citizens who are the target of a United States criminal proceeding. *United States v. Field*, 532 F.2d 404 (5th Cir.), *cert. denied* 429 U.S. 940, 97 S.Ct. 354, 50 L.Ed.2d 309 (1976); *United States v. Bank of Nova Scotia*, 740 F.2d 817 (11th Cir. 1984), *cert. denied*, 469 U.S. 1106, 105 S.Ct. 778, 83 L.Ed.2d 774 (1985); *United States v. Davis*, 767 F.2d 1025 (2d Cir.1985). The records are necessary to determine if a United States citizen has violated laws of the United States. In balancing the interests of the United States and the Cayman Islands, various courts have held that the Cayman interest in preserving the privacy of its banking customers is substantially diminished when the privacy interest is that of an American citizen (or entity) subject to American laws. *Davis*, 767 F.2d at 1035; *Bank of Nova Scotia*, 740 F.2d at 828; *Field*, 532 F.2d at 408–09; *Vetco*, 691

F.2d at 1289. By contrast, here Rubin is attempting to obtain the records of Cayman Island residents who are neither the target of a United States criminal proceeding nor subject to the laws of the United States. *See also In re Sealed Case*, 825 F.2d at 497–99. Moreover, both *Nova Scotia* and *Field* involve investigative grand juries which are required by law to maintain the secrecy of their proceedings, and therefore the foreign interest in protecting the privacy of bank customers is diminished. *Bank of Nova Scotia*, 740 F.2d 817, 828 n. 16 (11th Cir.1984); Fed.R.Crim.P. 6(e).

■ After carefully analyzing the competing interests at issue here, we conclude that the district court did not abuse its discretion in quashing the subpoena duces tecum. In this case, the Cayman Islands seeks to protect the right of privacy that is incorporated into its bank secrecy laws. We see no reason to set aside this interest, especially in light of the fact that Rubin could have obtained the records, without impinging upon this interest. *Vetco*, 691 F.2d at 1290. We are persuaded that if Sullivan were required to testify absent account waivers, the hardship to him would be great. He would be subject to criminal penalties which include a fine and incarceration. *Cf. United States v. First National City Bank*, 396 F.2d 897 (2d Cir.1968); *In re Sealed Case*, 825 F.2d at 497.[10]

## II.

Next, Rubin contends that the evidence at trial was insufficient to prove criminal acts, criminal knowledge or criminal intent. In considering the sufficiency of the evidence, we must view the evidence in the

---

**9.** Testimony also established that the total deposits in all of the FTC accounts at Barclay's from the date the accounts were opened until June 1, 1982 totaled $692,392.54.

**10.** Even if the order quashing the subpoena duces tecum were deemed to be constitutional error, it would not affect the result in this case. If there were constitutional error, it would be harmless beyond a reasonable doubt. *United States v. Hasting*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *accord Thomas v. Wyrick*, 687 F.2d 235 (8th Cir.1982), *cert. denied*, 459

U.S. 1175, 103 S.Ct. 824, 74 L.Ed.2d 1020 (1983) (harmless error analysis applied to review of whether exclusion of character witness' testimony deprived defendant of due process and sixth amendment right to compulsory process); *Peeler v. Wyrick*, 734 F.2d 378 (8th Cir.), *cert. denied*, 469 U.S. 1020, 105 S.Ct. 437, 83 L.Ed.2d 363 (1984) (harmless error analysis applied to review of whether intimidation of witness resulting in witness' failure to testify violated defendants' constitutional right to present their own witnesses to establish their defense).

light most favorable to the government, giving the government the benefit of all reasonable inferences which may logically be drawn therefrom. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Resnick*, 745 F.2d 1179, 1185 (8th Cir.1984). The evidence need not exclude every reasonable hypothesis of innocence, but simply "be sufficient to convince the jury beyond a reasonable doubt that the defendant is guilty." *United States v. Wells*, 721 F.2d 1160, 1161 (8th Cir.1983) (quoting *United States v. Taylor*, 599 F.2d 832, 838 (8th Cir.1979)). Indeed, this court may overturn the verdict only if the evidence properly viewed is such that "a reasonable-minded jury *must* have entertained a reasonable doubt as to the government's proof of one of the essential elements of the offense." *United States v. Noibi*, 780 F.2d 1419, 1421 (8th Cir.1986); *United States v. Netz*, 758 F.2d 1308, 1310 (8th Cir.1985) (per curiam).

The evidence in this case supports the jury's verdict. Criminal acts and the falsity of the prospectus was amply demonstrated. There was testimony that FTC's claimed flights into the Cayman Islands would have amounted to a substantial percentage of the Island's tourism and that Cayman Island tourist facilities could not have accommodated the additional tourist volume claimed by FTC. Indeed, Bodden testified that "the people would have had to sleep on the street." Additional testimony of Cayman Island officials showed that FTC did not fly group charter flights into the Cayman Islands. It was established that FTC did not have a license to conduct group air charters as required by the Cayman Island Director of Civil Aviation. In addition, the daily aircraft traffic record for all flights into and out of the Cayman Islands for the period of 1979 through 1982 revealed no group charter operation in the Cayman Islands by FTC.

The evidence at trial also established that no major airlines or air carrier ever leased, rented or chartered aircraft to FTC, as claimed in the FTC prospectuses. Finally, as discussed, evidence established that the alleged millions of dollars of group charter profits on deposit at Barclay's bank did not exist.

We are also satisfied the evidence proved criminal knowledge and intent. Rubin claims that he relied on the advice of attorneys, accountants and underwriters and they were the ones who caused the representations in the prospectus. However, there was substantial evidence to the contrary. Brian Miller, FTC's financial controller, testified that there was no group charter operation and that representations regarding it were a lie. He testified that he, Rubin and Karki prepared false letters, records and bank documents to convince their lawyers, accountants and underwriters that group charters actually existed. Ed Sun, a broker working on the 1982 offering, testified that Rubin and Karki provided the factual descriptions of FTC. Sun testified about several meetings in which Rubin provided detailed descriptions of the group charter operations which were later found to be fraudulent.

### III.

Finally, Rubin contends that the sentence imposed by the district court was an abuse of discretion. The imposition of a sentence is a matter within the district court's wide discretion; generally we will not overturn or review a sentence which falls within statutory limits. *Resnick*, 745 F.2d at 1188. A defendant must present a clear and convincing case of abuse of discretion or a patent violation of a constitutional guarantee to warrant setting aside a sentence. *United States v. Garcia*, 785 F.2d 214, 228 (8th Cir.), *cert. denied*, 475 U.S. 1143, 106 S.Ct. 1797, 90 L.Ed.2d 342 (1986).

Rubin has not made such a showing. In sentencing Rubin, the district judge observed that in his opinion, Rubin lied during his testimony and that he signed and filed a false affidavit. A trial judge may consider lack of truthfulness in deciding a sentence. *United States v. Grayson*, 438 U.S. 41, 45–55, 98 S.Ct. 2610, 2613–18, 57 L.Ed.2d 582 (1978); *United States v. Bangert*, 645 F.2d 1297, 1308 (8th Cir.), *cert. denied*, 454 U.S. 860, 102 S.Ct. 314, 70 L.Ed.2d 158 (1981). The fraud involved millions of dollars and extended over several years. A court is unquestionably free to consider the magnitude of the violation in

imposing sentence. *United States v. DeNoyer*, 811 F.2d 436, 441 n. 8 (8th Cir.1987) (quoting *United States v. Miller*, 589 F.2d 1117, 1139 (1st Cir.1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1499, 59 L.Ed.2d 771 (1978)). The sentence imposed was within the applicable statutory limits. Given the compelling evidence adduced at trial, we find no abuse of discretion in the district court's sentencing decision.

Rubin contends further that the trial court abused its discretion by imposing a sentence disproportionate to those imposed on his co-defendants.[11] This court has consistently held that mere variation in sentencing co-participants in a criminal transaction does not provide a basis for resentencing. *United States v. Becton*, 817 F.2d 468, 469 (8th Cir.1987); *Resnick*, 745 F.2d at 1188; *see also Clark v. Solem*, 693 F.2d 59 (8th Cir.1982), *cert. denied*, 460 U.S. 1090, 103 S.Ct. 1787, 76 L.Ed.2d 355 (1983) (no denial of equal protection in disparate sentences of codefendants). For these reasons, we are convinced the district court did not abuse its discretion in sentencing Rubin.[12]

We affirm Rubin's conviction.

---

**11.** Janet Karki received a twenty-year sentence; James McGovern received a six-year sentence; Miller, a three-year sentence; and Nelson received a four-year sentence.

**12.** Our discussion does not affect the district court's right to consider reduction of Rubin's sentence should he file a Rule 35 motion following the issuance of the court's mandate in this case.