**UNITED STATES of America, Plaintiff,**

v.

**Gary Lee SNOWDEN, Defendant.**

**No. CR 94–38–RE.**

United States District Court,
D. Oregon.

Feb. 10, 1995.

---

Kristine Olson Rogers, U.S. Atty., D. of Oregon, Michael Mosman, Asst. U.S. Atty., Portland, OR, for the U.S.

Gail Meyer, Ransom, Blackman & Weil, Portland, OR, for Gary Lee Snowden.

Brian Gingerich, Karnopp, Petersen, Noteboom, Hubel, Hansen & Arnett, Bend, OR, for the Confederated Tribes of the Warm Springs Reservation of Oregon.

### OPINION

REDDEN, Chief Judge:

Defendant, Gary L. Snowden, seeks discovery of counseling records in the possession of the government and the Confederated Tribes of the Warm Springs Reservation of Oregon (Tribes). A hearing on the motions was held on February 6, 1995. For the following reasons, relevant discovery will be allowed.

## BACKGROUND

Snowden is charged with sexually assaulting a Warm Springs tribal member on July 19, 1992. The indictment was brought in February 1994.

In November 1994, the Community Counseling Center of the Tribes (CCC) moved to quash Snowden's subpoena for the complainant's counseling records. The motion was denied and an order was issued requiring the CCC to produce "all records from July 19, 1990, to present within the possession and control of the Warm Springs Community Counseling Center pertaining to [complainant's] treatment for alcoholism and/or pertaining to the capacity of [complainant] to perceive and recollect events while intoxicated." Order, November 29, 1994.

The CCC submitted the records for *in camera* review in late December 1994. The CCC subsequently filed a supplemental motion to quash the subpoena based on a claim of sovereign immunity. None of the CCC documents has been released by the court pending ruling on the supplemental motion to quash.

In addition to opposing the CCC's supplemental motion to quash, Snowden seeks to expand the scope of the CCC subpoena, and to obtain all CCC documents that are in the possession or control of the government.

## FACTS RELEVANT TO DISCOVERY

For the most part, these facts are drawn from the affidavit of Gail Meyer, Snowden's counsel. At the scene of the alleged sexual assault, Snowden said he had consensual sex with complainant. She had been beaten. Complainant told the police initially that she was sexually assaulted by three men at a party and that one of the men was named Roy. At the hospital, complainant said that: three Native Americans sexually assaulted her; a "gentleman" beat and sexually assaulted her; she did not remember anything and she did not recall having sex with anyone; and an Indian in his 20s, tall, with short black hair, and a light colored car assaulted her. Complainant registered a .37 blood-alcohol level at the hospital.

After these statements were made, complainant said that a black man sexually assaulted her. Eight days later she explained that she had lied about the Natives assaulting her because she was "too embarrassed to admit she had been raped and beaten by a black man."

Records from Mountain View Hospital, where complainant was examined after the sexual assault, reportedly state that she had previously been admitted for alcohol use, suicidal ideation when she was 16, and that she showed signs of "battered wife syndrome" from her then-boyfriend, now-husband. The hospital released her for follow-up counseling at the CCC.

### DISCUSSION

I. **Supplemental Motion to Quash Subpoena**

A. **Sovereign Immunity**

The CCC, having already submitted its documents for review by the court pursuant to court order, now moves to quash the subpoena on the basis of tribal sovereignty.

In support of its motion, the CCC relies on *United States v. James,* 980 F.2d 1314 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 119, 126 L.Ed.2d 84 (1993). There, a subpoena was issued to the Director of Social Services of the Quinalt Indian Nation for documents relating to a sexual assault victim's alcohol and drug problems. The Ninth Circuit held that the subpoena was properly quashed because the tribe had sovereign immunity. *Id.* at 1319–20. Despite the fact that one department of the tribe, the Housing Authority, voluntarily released other documents relating to the victim, the Social Services department had not waived its sovereign immunity with regard to the alcohol and drug records. *Id.* at 1320.

■ The CCC offers evidence that the Tribal Council of the Tribes is empowered to delegate functions to subordinate departments, including the Human Services Department. Affidavit of James D. Noteboom, 1–2. The CCC is an office of the Human Services Department and is not a corporation. *Id.* at 2. This evidence is sufficient to establish that the CCC enjoys sovereign immunity, unless waived. *See Weeks Constr., Inc. v. Oglala Sioux Housing Auth.,* 797 F.2d 668, 670–71 (8th Cir.1986) (a housing authority established by a tribal council pursuant to its powers of self-government is a tribal agency with the attributes of tribal sovereignty); *Dubray v. Rosebud Housing Authority,* 565 F.Supp. 462, 465 (D.S.D.1983) (housing authority created by tribal council and operating with the United States Department of Housing and Urban Development is entitled to tribal sovereignty).

B. **Waiver**

■ Snowden argues that the CCC waived immunity when it appeared in court and argued that subpoena compliance was controlled by federal statute regulating disclosure of patient records. *See* 42 U.S.C. § 290dd–2 (1994). It did not raise sovereign immunity until after it complied with the court's Order and provided the documents to the court.

A tribe is entitled to sovereign immunity "absent express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by Congress." *James,* 980 F.2d at 1319. In *James,* the Ninth Circuit stated that the housing department had waived its immunity when it released documents. *Id.* at 1320; *see also United States v. Oregon,* 657 F.2d 1009 (9th Cir.1981) (holding that a tribe's actions as well as its expressed statements constituted waiver of its sovereign immunity).

The CCC's compliance with the court's Order for production cannot be construed as a waiver. However, in its initial motion to quash, the CCC unequivocally stated that it could only disclose complainant's records if the court ordered it to do so or complainant consented. Memorandum in Support of Motion to Quash Criminal Subpoena and Motion for Protective Order, 2–3. It argued that it was bound by federal statute regulating disclosure. *Id.* The court made findings pursuant to the statute and the CCC complied with the court's Order.

The CCC correctly notes that waiver cannot be implied. However, it fails to distin-

guish *James* or *U.S. v. Oregon* where the Ninth Circuit found that tribal actions (disclosure of documents and intervening in a suit) evidenced waiver of immunity. While the CCC resisted the subpoena, it stated that release of the records was controlled exclusively by federal statute. This affirmative statement by the CCC was a waiver of its sovereign immunity.

### C. Constitutional Rights of Defendant

■ Even if the CCC did not waive its sovereign immunity, Snowden's constitutional rights of due process, fair trial, confrontation, and compulsory process outweigh the CCC's claim of immunity.

*James* does not control because the defendant did not raise constitutional challenges to the claim of immunity. While Snowden does not cite any cases where a constitutional challenge has been raised against a claim of sovereign immunity, he draws an analogy to cases where a claim of privilege was overcome by the constitutional rights of a criminal defendant. Alternatively, he argues that if the subpoena is quashed, the indictment must be dismissed.

The cases cited by Snowden, involving claims of privilege, are distinguishable because they do not involve the sovereign immunity of a nation or tribe. Without cases involving sovereign immunity claims, the closest analogous cases involve efforts by a criminal defendant to subpoena records held in foreign banks, where foreign law prohibits disclosure. These are not completely analogous, however, because the targets of the subpoenas were not sovereigns. Nonetheless, I conclude that the interests balanced— the constitutional rights of a criminal defendant and the sovereignty of a foreign nation—are similar.

Courts have held that a federal government's subpoena of records held by foreign banks for use in criminal prosecutions is enforceable despite the fact that the bank's compliance with the subpoena conflicts with foreign law. *See United States v. Vetco, Inc.*, 691 F.2d 1281 (9th Cir.), *cert. denied*, 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981); *United States v. Bank of Nova Scotia*, 691 F.2d 1384 (11th Cir.1982), *cert. de-*

*nied*, 462 U.S. 1119, 103 S.Ct. 3086, 77 L.Ed.2d 1348 (1983).

Where a criminal defendant, rather than the federal government, has subpoenaed records from foreign banks, the results have been mixed. In *United States v. Rubin*, 836 F.2d 1096 (8th Cir.1988), the court quashed the defendant's subpoena aimed at bank records of two Cayman Island residents. *Id.* at 1102. It held that because Rubin was able to present his defense without the records, his rights to due process and compulsory process were not violated or, if they were, the error was harmless. *Id.* at 1101–02. There was no showing in *Rubin* that the evidence sought was favorable to his defense. *Id.* at 1101.

In an unpublished opinion the district court judge in *United States v. Noriega*, 1990 WL 142524 (S.D.Fla.1990), *vacated due to settlement*, distinguished *Rubin* and ordered a German bank to disclose records relating to Noriega's funds.

The court found that Noriega's constitutional right to counsel of his choice would be denied if he could not locate assets for his defense. The court in *Noriega* distinguished *Rubin* on the ground that Rubin's constitutional rights were not in jeopardy. *See also Minpeco, S.A. v. ContiCommodity Services, Inc.*, 118 F.R.D. 331, 333 (S.D.N.Y.1988) (finding "substantial government interest" in allowing defendant to prepare a thorough defense). The court also found that the government had an interest in Noriega's constitutional rights, especially in light of the government's involvement in freezing his assets. Finally, the court found that Germany's national interest in bank secrecy laws was not substantial enough to defeat the subpoena. The court noted that German law allowed a customer to allow disclosure, indicating that the interests were primarily private and not public.

This case is analogous to *Noriega* and distinguishable from *Rubin* because constitutional rights of the defendant are at issue.

The CCC has not argued what, if any, interest the Tribes have in preventing disclosure of the records apart from the complainant's personal privacy. I found that the pub-

lic interest in disclosure of relevant CCC documents outweighed the interests of the complaint and her treatment. *See* Order, November 29, 1994. Her privacy interest is considerably lessened by her unsolicited release of the records to the government. In addition, *in camera* review and the limited release to the parties of relevant records will provide substantial protection to the complainant's privacy.

In weighing the interests involved, I find especially important Snowden's substantial need to effectively challenge the recollection and credibility of the complainant who has given inconsistent statements of the events and who was extremely intoxicated at the time of the alleged assault.

I conclude that Snowden's constitutional rights would be infringed if the subpoena were quashed and that the Tribes' interest in preventing disclosure is not as substantial. The supplemental motion to quash the subpoena is denied.

## II. Motion to Expand the CCC Subpoena

Snowden previously moved to subpoena all of the CCC's documents relating to complainant. I denied the motion and instead allowed a subpoena of all documents from July 19, 1990 (two years before the alleged sexual assault) to present, regarding complainant's treatment for alcoholism and/or ability to perceive and recollect events while intoxicated.

Snowden, represented by new counsel, now moves to expand the order.

### A. Alcohol Tolerance

■ Snowden seeks all records relating to the complainant's tolerance for alcohol when she is highly intoxicated. This information is relevant to her ability to recollect while intoxicated, as she was on the night of the alleged sexual assault.

### B. Blackouts, Brownouts and Amnesia

I previously ruled that this evidence is relevant and will be produced.

### C. Organic Brain Damage (from Drug or Alcohol Use)

Snowden argues that evidence of brain damage (from drug or alcohol use) relates to her ability to perceive and relate her perceptions. If complainant's records show such brain damage, that information would be relevant.

### D. Battery .

■ Snowden seeks evidence of battery by complainant's then-boyfriend, now-husband or other family members before or at the time of the alleged sexual assault. Snowden states that this information is relevant to why complainant might fabricate a claim against him (i.e. fear of violence for having consensual sex). He cites her statement that she was embarrassed to say that she was sexual assaulted by a black man. Snowden has evidence that the complainant's then-boyfriend, now-husband battered complainant.

I find that any records showing that anyone battered complainant for having consensual sex with other men would be relevant because it would show a motive for complainant to lie about the alleged sexual assault. However, general evidence that complainant was battered is not relevant.

### E. Racial Animus

■ Snowden seeks evidence of racial animus against African–Americans by complainant or her family. If there is evidence that complainant or her close family was hostile to African–Americans, that evidence is relevant in light of her statements to the police.

I decline to expand the time-frame of the CCC subpoena. Evidence beyond two years before the alleged sexual assault is too temporally remote to be relevant.

## III. Second Supplemental Discovery Motion

The only issue remaining from the hearing regarding discovery sought from the government is whether the complainant's release of her CCC documents to the government entitles defendant to production of all the documents.

On December 8, 1994, the complainant signed a release allowing disclosure of her CCC records (from January 1992 to present) to the U.S. Attorney for review in preparation for this case. The release states that "any redisclosure by another agency (sic) requires [complainant's] written consent[.]" Unless revoked, the release expires April 30, 1995.

The release evidences complainant's desire to allow limited disclosure of some, but not all, records to the U.S. Attorney and prohibits redisclosure. It, therefore, does not authorize the government to provide the records to the defense. However, even if this were an unlimited release to the government, defendant is only entitled to relevant documents in the government's possession. Pursuant to this Opinion and accompanying Order, relevant CCC documents will be provided by the court to the defense.

### CONCLUSION

The court will review the CCC documents in its possession and identify any records that fall within the court's Order, dated November 29, 1994, and this Opinion. Within those documents, any irrelevant material will be redacted. The relevant material will be provided to counsel for the defendant and the government.

The Tribes' supplemental motion to quash is denied. Defendant's motion to expand the CCC subpoena is granted in part and denied in part. Defendant's second supplemental discovery motion with respect to the CCC documents is granted in part and denied in part. *See* Minute Order, dated February 6, 1995, for rulings on the remainder of defendant's second supplemental discovery motion.