**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

No. 96-3954

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | Appeal from the United |
| | * | States District Court for the |
| v. | * | Eastern District of Missouri. |
| | * | |
| Argentra Cody, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: April 16, 1997
Filed: June 3, 1997

_____

Before BOWMAN, WOLLMAN, and HANSEN, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Argentra Cody was convicted by a jury of two counts of possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841(a)(1) (1994). The District Court[1] sentenced Cody to concurrent terms of 188 months' imprisonment on each count. Cody appeals her convictions, arguing that the District Court erred by admitting

_____

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

into evidence her taped confession and by limiting her cross-examination of two government witnesses. We affirm.

## I.

On February 16, 1996, after receiving information from a confidential informant that Cody was distributing cocaine base from her mother's home, St. Louis police officers began surveillance on the residence. The officers observed activity at the residence consistent with drug dealing. When Cody and a young man left the house in a vehicle, one team of officers followed them to a nearby gas station. Cody parked at the gas station, exited her vehicle and, when she noticed two officers approaching her, screamed and discarded five small plastic bags she had been holding in her hand. Later testing confirmed that the bags contained a total of twenty-one grams of cocaine base. The police handcuffed Cody and notified the investigation's lead officer, who was still conducting surveillance at the residence, that Cody had been detained. Officer Hines, the lead officer, arrived within minutes, read Cody her constitutional rights, and transported her to the police station. Officer Hines testified that Cody was not questioned at the time of her arrest, nor did she volunteer a statement.

While Cody was in custody at the police station, Officer Burle continued surveillance at the residence and observed a young girl, later identified as Cody's niece, leave the house and gingerly deposit one object into a trash dumpster and another under the dumpster. These two items, a cardboard box containing a total of 148 grams of cocaine base packaged in plastic bags and an electronic scale, and a .380 caliber automatic handgun, were later recovered by police and taken to the station. When

Officers Hines and Burle confronted Cody with this physical evidence and informed her that police had observed a young girl place these items in and under the dumpster, Cody identified the girl as her niece and began making incriminating statements. Officer Hines immediately stopped Cody and again advised her of her constitutional rights. Cody did not execute a written waiver form, but subsequently made a taped confession in which she admitted possessing with intent to distribute the twenty-one grams of cocaine base seized at the gas station and the 148 grams of cocaine base seized from the dumpster.

## II.

Cody first argues that the District Court erred by admitting her taped confession into evidence. After being arrested and advised of her constitutional rights under Miranda v. Arizona, 384 U.S. 436 (1966), Cody alleges that she expressly invoked her right to remain silent. She also claims that the police questioned her in violation of her right to remain silent and that her later confession was not the result of a voluntary waiver of that right. The District Court, based on the report and recommendation of a magistrate judge,[2] found that Cody never asserted her right to remain silent. The court further found that, even if Cody did assert this right, when officers confronted Cody at the police station with the drugs and gun seized from the trash dumpster outside her mother's residence and commented that these items were placed in the dumpster by a young girl, they did not re-initiate custodial questioning in violation of

---

[2]The Honorable Lawrence O. Davis, United States Magistrate Judge for the Eastern District of Missouri, to whom pretrial matters were referred for rulings pursuant to 28 U.S.C. § 636(b) (1994).

Cody's right to remain silent, nor did the officers coerce either Cody's waiver of her right to remain silent or her voluntary statement. Consequently, the District Court denied Cody's motion to suppress her confession.

We review a district court's finding that a defendant did not assert her constitutional right to remain silent for clear error. See United States v. Winn, 969 F.2d 642, 643 (8th Cir. 1992) (standard of review). The District Court, based on the testimony of Officers Hines and Burle, found that Cody did not invoke her right to remain silent either immediately after her arrest or later when she was confronted with evidence at the police station. We cannot conclude that this finding is clearly erroneous.

Furthermore, even if we were to accept Cody's assertion that she explicitly invoked her right to remain silent when she was arrested, we would reach the same result. An invocation of the right to remain silent does not mean that questioning can never be resumed, see Michigan v. Mosley, 423 U.S. 96 (1975), nor does it mean that a defendant cannot later waive this right, see North Carolina v. Butler, 441 U.S. 369, 374-75 (1979).

Once a person in custody has invoked her right to remain silent, admissibility of any of her subsequent statements depends on whether her "'right to cut off questioning' was 'scrupulously honored.'" Mosley at 423 U.S. at 104 (quoting Miranda, 384 U.S. at 474, 479). Once the right is invoked, the police must immediately cease questioning, allow a "significant amount of time" to pass before questioning begins again, re-advise the detainee of her Miranda rights, and limit the ensuing interrogation to questions

-4-

regarding a separate crime not the subject of the first questioning session.  United States v. House, 939 F.2d 659, 662 (8th Cir. 1991).

Here, Cody was not questioned after she was arrested at the gas station, was advised of her Miranda rights, and allegedly invoked her right to remain silent.  Nor was she questioned immediately upon her arrival at the police station.  Rather, a period of more than three hours elapsed between the moment Cody allegedly invoked her right to remain silent and the moment Officers Burle and Hines confronted Cody with the evidence retrieved from the dumpster.  After being confronted with this evidence of additional drug crimes, Cody spontaneously made incriminating statements.  Officer Hines immediately interrupted Cody's confession to re-advise her of her Miranda rights.  Even if Cody invoked her right to remain silent, it was not violated when police later confronted her with additional evidence, see Mosley 423 U.S. at 106, and her subsequent confession was admissible.

Likewise, an invocation of the right to remain silent can be waived by subsequently making a voluntary confession to the police.  See, e.g., Butler, 441 U.S. at 374-75 (noting that waiver may be inferred from particular facts and circumstances surrounding a case), cited in House, 939 F.2d at 662.  We review the ultimate question of the voluntariness of a defendant's confession de novo, but we review the district court's factual findings surrounding the confession for clear error.  See United States v. Magness, 69 F.3d 872, 874 (8th Cir. 1995).  The test for determining the voluntariness of a confession "is whether, in light of the totality of the circumstances, pressures exerted upon the suspect have overborne his will."  United States v. Jorgensen, 871 F.2d 725, 729 (8th Cir. 1989).

Cody claims that when the officers informed her at the police station that an unidentified girl had placed the seized drugs and gun in the dumpster, she felt compelled to admit her ownership of the contraband. We are not convinced. There is no evidence that the officers engaged in activity that served to overbear Cody's will, causing her to confess involuntarily. A thorough review of the record before us reveals that Cody voluntarily made her statement to police.

Assuming that Cody did invoke her right to remain silent when she was arrested, we conclude that the police did not improperly initiate custodial questioning in violation of this right and that Cody waived her right to remain silent by voluntarily confessing. The District Court's admission of Cody's taped confession was not in error.

III.

Cody next argues that the District Court improperly restricted her cross-examination of two police officers involved in the investigation. We review the district court's decision to limit cross-examination for an abuse of discretion, see United States v. Caldwell, 88 F.3d 522, 524 (8th Cir.), cert. denied, 117 S. Ct. 625 (1996), reversing only if "there has been a clear abuse of discretion and a showing of prejudice to the defendant," United States v. Barrett, 937 F.2d 1346, 1349 (8th Cir.) (quoting United States v. Rubin, 836 F.2d 1096, 1099 (8th Cir. 1988)), cert. denied, 502 U.S. 916 (1991). The District Court's limitation on Cody's right to cross-examination was not an abuse of discretion.

On the morning of trial, defense counsel presented the government with an unofficial transcript of the suppression hearing prepared by a transcription service at defense counsel's request from a tape recording of the proceedings. Defense counsel intended to use this unofficial transcript to impeach government witnesses at trial with prior inconsistent testimony given during the suppression hearing. The government objected to the use of this transcript and, although the precise grounds on which the District Court based its decision are unclear from the record, the court refused to allow defense counsel to use the unofficial transcript for impeachment purposes. However, the District Court did not rule out the possibility that defense counsel could play the tape recording of the suppression hearing to demonstrate inconsistencies in a witness's testimony.

With respect to Officer Hines's testimony, Cody claims that the District Court erred in concluding that his testimony at trial was not inconsistent with his testimony at the suppression hearing. Under Federal Rule of Evidence 613, before a party may impeach a witness with a prior inconsistent statement, the party must first establish that the witness's statement is actually inconsistent with, although not necessarily "diametrically opposed" to, the prior statement. United States v. McCrady, 774 F.2d 868, 873 (8th Cir. 1985) (quoting United States v. Dennis, 625 F.2d 782, 795 (8th Cir. 1980)).

Cody argues that Officer Hines's testimony at the suppression hearing indicates that he did not question Cody regarding the young girl's identity prior to re-advising Cody of her Miranda rights. At trial, Hines initially testified that he did ask Cody this question and then testified that he did not. Defense counsel attempted to impeach

Hines's trial testimony by playing the tape recording of Hines's suppression hearing testimony. After first listening to the tape in chambers, the District Court determined on the second day of trial that the testimony on the tape was not inconsistent with the testimony at trial noting, "Quite frankly, I don't see the inconsistency between the testimony that he gave at the suppression hearing and his testimony here [yesterday]. . . . [T]here is no inconsistent statement or contradictory statement." Trial Tr. (Aug. 22, 1996) at 5-6. The District Court concluded that, considering Officer Hines's testimony from both proceedings as a whole, his testimony was essentially the same--that he did not question Cody at the police station; he merely confronted her with the additional evidence. As a result, defense counsel was prevented from attempting to impeach Officer Hines with the tape recording of his earlier testimony.

"The trial judge has considerable discretion in determining whether testimony is 'inconsistent' with prior statements . . . ." Dennis, 625 F.2d at 795. The District Court considered the tape recording of Officer Hines's prior testimony, compared it to his testimony at trial, and determined that the two were not inconsistent. We cannot hold, based on the record before us, that the District Court abused its discretion in reaching this conclusion.

Cody also attacks the District Court's refusal to permit defense counsel to impeach Officer Burle's trial testimony with the unofficial transcript or with the tape recording of the suppression hearing.[3] Again, we find no abuse of discretion.

---

[3]Cody also challenges the District Court's ruling, based on the same concerns discussed below, to deny defense counsel's request to refresh Officer Burle's recollection with the unofficial transcript. We conclude that the District Court did not abuse its discretion in refusing to allow the unofficial transcript to be used in this

During cross-examination of Officer Burle on the second day of trial, an extended sidebar conference occurred wherein the District Court warned defense counsel that, pursuant to the court's earlier ruling, counsel would not be allowed to impeach Officer Burle's testimony with the unofficial transcript. See Trial Tr. (Aug. 22, 1996) at 52-62. The court expressed concern that the unofficial transcript could contain inaccurate or incomplete information and that the witness's refusal to acknowledge the accuracy of statements read from that transcript would mislead the jury.[4] The court informed defense counsel that he would be allowed to impeach Officer Burle with the audio recording of his earlier testimony at the suppression hearing provided that the tape was cued to the proper spot and no undue delay or waste of time occurred. Defense counsel suggested that he would need a five minute recess to cue the tape to the relevant testimony after every response Officer Burle gave that was allegedly inconsistent with his prior testimony. The District Court refused this request based on the certain disruption of the trial that would ensue. See Trial Tr. (Aug. 22, 1996) at 54.

Under Federal Rule of Evidence 403, the District Court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay [or] waste of time." Fed. R. Evid. 403; see, e.g., United States v. Bear Stops, 997 F.2d 451, 455 (8th Cir. 1993). "In determining whether evidence should have

manner.

[4]The District Court noted, "This is a concern that the Court has as well, because if the jury is going to have the impression that testimony that is reflected in the transcription is accurate or it has some indicia of reliability by the addition of it being an official transcript, then there needs to be an official transcript." Trial Tr. (Aug. 22, 1996) at 61.

been excluded under Rule 403, a reviewing court must give great deference to the trial judge who saw and heard the evidence." Dennis, 625 F.2d at 796.

Here, the District Court expressed concern that use of the unofficial transcript to impeach Officer Burle's testimony would potentially confuse and mislead the jury if the witness refused to unequivocally accept the transcript as a true representation of his prior testimony. We agree with the District Court that the potential for confusion outweighed the probative value associated with the use of this transcript for defense counsel's stated purposes. We conclude, therefore, that the District Court did not abuse its discretion in refusing to allow defense counsel to use an unofficial transcript of the suppression hearing to impeach Officer Burle's testimony.

Likewise, the District Court did not abuse its discretion in refusing defense counsel's request to take a five minute recess to cue the suppression hearing tape after each allegedly inconsistent statement made by Officer Burle during his trial testimony. The district court is allowed wide discretion in determining whether the introduction of evidence causes undue delay and waste of time. See United States v. Carr, 67 F.3d 171, 175 (8th Cir. 1995), cert. denied, 116 S. Ct. 1285 (1996). The District Court did not abuse its discretion in refusing defense counsel's request to present evidence in this manner.

IV.

Finally, Cody argues that the District Court's limitation of her cross-examination of Officers Hines and Burle violated her Sixth Amendment right to confrontation. We disagree. "Absent a clear abuse of discretion and a showing of prejudice, we will not

reverse a district court's ruling limiting cross-examination of a witness on the basis that it impermissibly infringed on the defendant's right of confrontation." United States v. Brown, 110 F.3d 605, 611 (8th Cir. 1997). Cody was allowed to cross-examine each officer extensively regarding both the investigation that led to her arrest and the circumstances surrounding her ultimate confession. Had defense counsel obtained an official transcript of the suppression hearing, the District Court likely would have permitted defense counsel to utilize that document to impeach the officers with any prior testimony that was inconsistent. The District Court specifically expressed its willingness to allow defense counsel to impeach both officers with the tape recording of the suppression hearing provided the tape was cued to the relevant testimony. In these circumstances, we cannot conclude that the District Court abused its discretion in limiting Cody's cross-examination, nor can we conclude that Cody's Sixth Amendment right to confrontation was violated.

V.

The judgment of the District Court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-11-