# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2224

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Darwin Beck, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: December 11, 2008
Filed:  February 23, 2009

_____

Before LOKEN, Chief Judge, BEAM, Circuit Judge, and KYLE,[1] District Judge.

_____

KYLE, District Judge.

Darwin Beck appeals his conviction for being a felon in possession of a firearm. He argues that the district court[2] erred when it (1) limited cross-examination of a Government witness, (2) failed to exclude evidence disclosed by the Government in an untimely fashion, and (3) precluded defense counsel from arguing that the police

_____

[1] The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

[2] The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

did not conduct a thorough investigation. We find no merit to any of these contentions and, accordingly, affirm.

## I.  FACTUAL BACKGROUND

On September 25, 2007, St. Louis Metropolitan Police officers Steven Schwerb and Jason Chambers traveled to a public-housing complex after dispatchers received a 911 call that someone was "flourishing" a firearm. Upon arrival, they found Dewayne Long, a resident of the complex, standing outside bleeding with a gash on his head. Long told the officers that he and his cousin had attempted to break up a fight between Beck and another resident of the complex and that Beck had hit him on the head with a firearm. He also told the officers that the complex's manager, Roger Flowers, had arrived on the scene before them and had gone with Beck to his (Beck's) second-floor apartment.

Schwerb and Chambers then went to Beck's apartment and placed him under arrest. Beck admitted to the officers that he had fought with Long but denied having a gun. The officers then asked for, and were given, permission to search Beck's apartment. Schwerb conducted the search but did not find a weapon. In the course of his search, however, he observed a door in the kitchen that led onto a small porch. He went out onto the porch and looked over the balcony and saw a pistol in a common area on the ground below. He then went downstairs, retrieved the firearm, and brought it back to the apartment. When questioned, Beck admitted that it was his, that he had "messed up," and that he had thrown it over the balcony when he saw the officers arriving because he was a felon and was not permitted to possess it. The officers later showed the firearm to Long, who confirmed that it was the firearm with which Beck struck him.

Beck was initially tried in January 2008; that trial resulted in a hung jury. Long did not testify at that trial because the Government could not locate him. Beck was

re-tried in February 2008, and Long testified at the second trial. Beck was convicted and now appeals.

## II. DISCUSSION

### A Limiting Schwerb's cross-examination

Beck first argues that the district court improperly precluded defense counsel from asking certain questions of Schwerb on cross-examination. "We review a trial court's limitation of cross-examination only for abuse of discretion; we will reverse only if 'there has been a clear abuse of discretion and a showing of prejudice to the defendant.'" United States v. Barrett, 937 F.2d 1346, 1349 (8th Cir. 1991) (quoting United States v. Rubin, 836 F.2d 1096, 1099 (8th Cir. 1988)); accord, e.g., United States v. Cody, 114 F.3d 772, 776 (8th Cir. 1997); United States v. Caldwell, 88 F.3d 522, 524 (8th Cir. 1996).

In the spring of 2007, several St. Louis police officers were implicated in a scandal concerning Cardinals World Series tickets. The officers purportedly had seized tickets being sold by scalpers and used the tickets themselves or gave them to friends. Seven officers, including Schwerb, were demoted as a result of the scandal and suspended without pay for two weeks, although Internal Affairs never completed its investigation into the allegations.

The Government moved *in limine* to exclude defense counsel from inquiring about Schwerb's involvement in the scandal, and the district court granted that motion. Beck contends this was error because attacking Schwerb's credibility was essential to his case. We disagree.

Under Federal Rule of Evidence 608(b), specific instances of witness untruthfulness may be inquired into on cross-examination in the discretion of the

court.[3] But such cross-examination – as with most evidence – is subject to exclusion if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." United States v. Beal, 430 F.3d 950, 956 (8th Cir. 2005) (quoting Fed. R. Evid. 403); see also United States v. Drapeau, 414 F.3d 869, 875 (8th Cir. 2005) ("[t]rial judges retain 'wide latitude' to impose 'reasonable limits'" on cross-examination, particularly where the subjects inquired into might confuse the jury or be "repetitive or only marginally relevant") (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)).

Here, the district court properly considered the effect the proposed cross-examination would have had on the trial, noting that even if Schwerb's testimony were thoroughly discredited by the ticket scandal, such impeachment would have had no impact on the testimony of Chambers (who testified that Beck admitted the gun was his) or Long (who identified the gun and identified Beck as his assailant). Given that Schwerb's testimony was duplicative of, and corroborated by, the testimony of Chambers and Long, the exclusion of the proposed cross-examination had little impact on the Government's case. Accordingly, we cannot say the district court abused its discretion in precluding this line of impeachment. For the same reason, even if the district court had erred, its error was harmless. See United States v. Santisteban, 501 F.3d 873, 879 (8th Cir. 2007) (harmless-error inquiry with respect to cross-examination "depends on 'the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case'") (quoting Van Arsdall, 475 U.S. at 684).

---

[3] Theft is conduct probative of truthfulness. See United States v. Callaway, 938 F.2d 907, 911-12 (8th Cir. 1991).

**B.    Admission of the bloody towel**

Long used a towel to stop the bleeding on his head caused by Beck's assault. Because the Government had been unable to locate Long before the first trial, it was unaware of the towel until a Saturday two days before the start of the second trial. The Government immediately disclosed the existence of the towel to Beck, who moved *in limine* to preclude the Government from offering it.  The district court denied that motion, a decision we review for abuse of discretion.  E.g., United States v. Gianakos, 415 F.3d 912, 919 (8th Cir. 2005).  We find no abuse of discretion here.

A district court does not abuse its discretion in allowing the introduction of evidence disclosed in a dilatory fashion unless that evidence substantially prejudiced the defendant.  See United States v. Williams, 902 F.2d 675, 677 (8th Cir. 1990). Here, Long testified that Beck hit him with a firearm, and he further testified concerning the extent of his injury, which was consistent with being struck by an object.  Schwerb and Chambers corroborated Long's version of events, testifying that Long had a gash on his head when they arrived on the scene.  The purpose of admitting the towel was merely to corroborate this testimony.  Accordingly, it likely had little (if any) impact on the trial.

Furthermore, there is no dispute that Beck was aware, in advance, that Long would be called to testify about the assault at the second trial.  Accordingly, he cannot credibly argue that the admission of the towel – which merely corroborated Long's testimony – somehow amounted to unfair surprise.  Indeed, Beck could have requested a continuance given the late disclosure, but tellingly he did not.  See United States v. Bissonette, 164 F.3d 1143, 1145 (8th Cir. 1999) (failure to request continuance after untimely disclosure "indicat[es] that [the defendant] did not perceive the need for additional time to prepare").

For these reasons, we conclude that Beck has failed to show any substantial prejudice from the admission of the towel.

### C. Lack of thoroughness of the investigation

Long was the only person Schwerb and Chambers interviewed before arresting Beck. At the first trial, the district court granted the Government's motion to preclude Beck from arguing that the officers did not conduct a thorough investigation. This ruling was based on the fact that Long was not going to testify; his statements to the officers, therefore, were inadmissible hearsay. Those statements, however, explained why Schwerb and Chambers did not talk to any other witnesses. Accordingly, defense counsel might have given an unfair impression to the jury by arguing that the investigation was not thorough, because the Government had no means to rebut such an assertion with Long's statements.

Before the second trial, the Government renewed all of its motions *in limine*, and the district court adopted its earlier rulings. Beck now argues that the district court erred by granting the Government's motion regarding the thoroughness of the investigation. But because Long testified at the second trial, the Government's concerns underpinning that ruling were rendered moot – Beck could argue that the officers conducted a superficial investigation, and the Government could respond to that assertion with Long's testimony about what he told the officers. Beck clearly recognized this, because the record is replete with instances in which he injected the alleged lack of thoroughness of the investigation into the trial, including during closing argument. Accordingly, while the district court may have granted the Government's motion *in limine* on this issue, that ruling ultimately did not impair Beck's defense in any way. We perceive no error, let alone a reversible one.

## IV.   CONCLUSION

For all the foregoing reasons, we affirm Beck's conviction.

_____