# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-1126

_____

United States of America

*Plaintiff - Appellee*

v.

Casey Peebles

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 15, 2017
Filed: March 5, 2018

_____

Before SMITH, Chief Judge, KELLY and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

A jury convicted Casey Peebles of two offenses for his participation in a drug trafficking conspiracy. Peebles appeals the district court's[1] denial of his motion for

---

[1]The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri.

judgment of acquittal as well as a number of evidentiary rulings. For the reasons that follow, we affirm.

## I.

Following a five-day trial, a jury convicted Peebles of conspiracy to distribute 100 grams or more of heroin in violation of 21 U.S.C. §§ 841(a)(1) and 846 and possession with the intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1). We recount the pertinent evidence in the light most favorable to the verdict.

In 2013, the St. Louis Metropolitan Police Department was investigating the distribution of narcotics out of an apartment located at 5911A Highland Avenue. The investigation revealed that two brothers, Joseph and Thomas Rander, were among the leaders of an organization moving cocaine, marijuana, and heroin from the San Bernardino, California, area to St. Louis, Missouri, for distribution. An informant, who began cooperating with law enforcement officers following his arrest, had advised investigators that members of the organization preferred to use young female couriers to transport the narcotics as they were less likely to draw the attention of law enforcement. The informant also told law enforcement that the organization had recently received and was distributing a kilogram of heroin out of 5911A Highland Avenue.

Armed with this information, law enforcement began surveilling the Highland Avenue apartment building during the late evening hours on April 2, 2013. Just before midnight, the officers observed a dark-colored Land Rover drive up, and a male (later identified as Peebles) get out of the driver's side door. The man walked into the apartment building. A short time later, they saw the man leave the building while holding a bulky object in the right side of his coat and get back inside the Land Rover.

The informant was inside the apartment while the officers were stationed outside. He relayed to law enforcement what happened after Peebles entered the apartment. The officers briefly followed the Land Rover before stopping it. Law enforcement officers encountered Peebles, Vernon Westcott (Peebles's cousin), and Leah Douglas inside the vehicle. Upon approaching the vehicle, Detective Blake Witzman observed Douglas, who was seated in the rear passenger seat, with her right hand and arm down the front of her pants.

When the initial search did not reveal any heroin, the officers called for a female officer to search Douglas more thoroughly. Officer Erin Becherer arrived at the scene and conducted the search of Douglas. Officer Becherer discovered Douglas was concealing a bag containing 247.3 grams (8.723 oz.) of a substance containing heroin. At nearly the same time, another officer arrived with his trained drug-sniffing dog. During a walk-around, the dog alerted to the area near where Douglas had been seated. Douglas, Westcott, and Peebles were arrested and transported to the Drug Enforcement Administration building for questioning.

Douglas was originally somewhat deceptive during the interview, telling task force officers that she had stolen the heroin from her boyfriend, who was not Peebles or Westcott. By the time of trial, however, Douglas was cooperating and testified that she was dating Peebles at the time of the stop. She explained that she often accompanied Peebles and was asked to hold narcotics for him as they traveled around to distribute the drugs. Douglas testified that on April 2, 2013, she was with Peebles when he drove to the apartment building on Highland Avenue and that Peebles went inside the building for about ten to fifteen minutes. Douglas said that after Peebles drove away, Peebles commented about the police following them, stating "Here come them boys, Cuz." Douglas testified that as Peebles was removed from the vehicle, Westcott handed heroin to Douglas and she hid it in her pants.

At trial, the informant testified about what he observed on April 2, 2013. He told the jury that he saw a male get out of the driver's side door of a dark-colored Land Rover, enter the apartment, and get heroin from Joseph Rander. After Rander delivered the heroin, the informant let the male out of the apartment and the male returned to the Land Rover. The informant did not know the name of the man on the night in question, but identified Peebles in the courtroom as the male he saw that night.

Over Peebles's objection, the informant testified to various statements made on April 2nd by Joseph Rander, including that Rander told the informant to "work the door," or provide security at the apartment while Rander distributed the heroin. The informant also relayed the following additional statements concerning his interactions with Rander:

- "He said Twin people fit'n to come through, we fit'n to be on, we fit'n to be back together."
- "Well, he had got a call, he had got a call from him telling him he was about to pull up; so he had told me to go to the door."
- "When he had left after I had notified the police that he had got the drugs and left, when I had went back upstairs, that's when Joseph Rander had told me he had gave him 9 ounces, he had fronted him."

After the close of evidence, Peebles moved for a judgment of acquittal, arguing the government presented insufficient evidence for a jury to convict him of either charged offense. The district court denied the motion, and the jury found Peebles guilty of both offenses. The district court sentenced Peebles to concurrent 120-month terms of imprisonment on each count.

-4-

## A.    Sufficiency of the Evidence

Peebles first argues that the government presented insufficient evidence to sustain the convictions.  We review the denial of a motion for judgment of acquittal *de novo* and will affirm unless, viewing the evidence in the light most favorable to the government and accepting all reasonable inferences which may be drawn in favor of the verdict, no reasonable jury could have found the defendant guilty.  United States v. Chatmon, 742 F.3d 350, 352 (8th Cir. 2014).  We must uphold the verdict "[i]f there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt[.]"  United States v. Huyck, 849 F.3d 432, 441 (8th Cir. 2017).

To convict Peebles for conspiracy to distribute more than 100 grams of heroin, the government had to prove: "(1) the existence of an agreement among two or more people to achieve an illegal purpose, (2) the defendant's knowledge of the agreement, and (3) that the defendant knowingly joined and participated in the agreement."  United States v. Whirlwind Soldier, 499 F.3d 862, 869 (8th Cir. 2007).  The informant testified that he personally witnessed Rander deliver heroin to Peebles inside an apartment at 5911A Highland Avenue. Peebles's girlfriend at the time testified as to Peebles's involvement in distributing heroin and the events that occurred on April 2, 2013.  Their testimony is consistent with the law enforcement officers' observations of Peebles on the night of August 2, 2013, as well as information that the officers had learned during the course of their investigation of the drug trafficking organization.

The fact that key testimony was provided by cooperating co-conspirators does not undermine the sufficiency of the evidence, as the jury is presumed to take that fact into consideration when determining the credibility of the witnesses.  United States v. Coleman, 525 F.3d 665, 666 (8th Cir. 2008) (citing United States v. Velazquez,

410 F.3d 1011, 1015–16 (8th Cir. 2005)) ("We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony."). Viewing the evidence in the light most favorable to the verdict, the evidence was more than sufficient to establish that Peebles was a member of a conspiracy to distribute heroin.

To establish that Peebles possessed heroin with the intent to distribute, the government must prove the defendant knowingly possessed the heroin and he intended to distribute it. United States v. Trejo, 831 F.3d 1090, 1094 (8th Cir. 2016). A person who, although not in actual possession, has both knowledge of presence and control over a thing, either directly or through another person, is in constructive possession of it. United States v. Johnson, 18 F.3d 641, 647 (8th Cir. 1994).

Evidence at trial established that Rander fronted a quarter kilogram of heroin to Peebles and that Peebles took physical possession of the heroin. This evidence, along with its reasonable implications, is sufficient to sustain the conviction. Moreover, during the traffic stop, officers found the heroin on Douglas, who testified that Peebles frequently gave her drugs to hold in order to minimize Peebles's chances of arrest. This evidence when coupled with Peebles's presence and conduct at 5911A Highland Avenue was more than sufficient to establish Peebles's constructive possession of the heroin.

As to the second element, an intent to distribute may be established solely by the quantity of drugs. United States v. Serrano-Lopez, 366 F.3d 628, 635 (8th Cir. 2004). The amount in question was a quarter kilogram (nearly nine ounces) of heroin with a purported street value of $15,000 to $18,000. This quantity supports the jury's finding that Peebles possessed with intent to distribute 100 grams or more of heroin.

**B.     Evidentiary Rulings**

*1.     Co-Conspirator Statements*

Peebles argues that the district court erred in admitting statements made by Rander.  An out-of-court statement "offered against an opposing party" that "was made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. Fed. R. Evid. 801(d)(2)(E).  We review the district court's admission of out-of-court statements "under Rule 801(d)(2)(E) for an abuse of discretion, 'keeping in mind that its discretion is particularly broad in a conspiracy trial.'" United States v. Young, 753 F.3d 757, 771 (8th Cir. 2014) (quoting United States v. Davis, 457 F.3d 817, 824–25 (8th Cir. 2006)) (citations omitted).  Peebles claims the testimony was inadmissible because the evidence did not support a finding that he was a member of the charged conspiracy or that the statements were anything other than idle chatter. We have concluded that the evidence was sufficient to establish Peebles's membership in the charged conspiracy. We now review for clear error the district court's finding that a statement was made in furtherance of a conspiracy.  United States v. Beckman, 222 F.3d 512, 522–23 (8th Cir. 2000).

"It is well-established that an out-of-court declaration of a coconspirator is admissible against a defendant if the government demonstrates (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." United States v. Bell, 573 F.2d 1040, 1043 (8th Cir. 1978); see also Fed. R. Evid. 801(d)(2)(E).  For the reasons explained above, the government presented ample evidence that Peebles was a member of a drug trafficking conspiracy engaged in the distribution of heroin in the St. Louis area.  The government also presented ample evidence that Peebles was a member of the conspiracy with Rander, the informant, and Douglas.  Finally, the statements at issue, including that "Twin people fit'n to come through . . . [and] be back together"; that Rander directed the informant

to "work the door" when Peebles showed up to get the heroin; and that Rander told the informant that he fronted Peebles nine ounces of heroin, were undoubtedly statements made in furtherance of the drug trafficking conspiracy. The district court did not abuse its discretion in admitting the out-of-court statements under Fed. R. Evid. 801(d)(2)(E).

## 2.     Impeachment by a Prior Conviction

We ordinarily review for abuse of discretion when considering whether evidence concerning a prior conviction was properly admitted for impeachment purposes. United States v. Levine, 700 F.2d 1176, 1182 (8th Cir. 1983). However, when a defendant preemptively introduces evidence of a prior conviction on direct examination, he may not argue on appeal that the admission of such evidence was error. Ohler v. United States, 529 U.S. 753, 759–60 (2000). Peebles chose to preemptively introduce his burglary conviction from 2014 during direct examination and thus is precluded from raising this issue on appeal.[2]

## 3.     Use of Law Enforcement Officer as Drug Trafficking Expert

We review a district court's decision to admit expert testimony "for abuse of discretion, according it substantial deference." United States v. Holmes, 751 F.3d 846, 849 (8th Cir. 2014). Peebles raises two issues related to the expert testimony of Officer Edward Clay, who testified concerning the *modus operandi* of drug trafficking operations. First, he argues that the district court did not conduct an independent evaluation of the reliability of Officer Clay's testimony but instead relied on general precedent allowing admission of testimony by expert witnesses in federal drug prosecutions. We have recognized that the "relevant reliability concerns may

---

[2] Even if we were to consider the argument, Peebles has failed to demonstrate the conviction was inadmissible under Fed. R. Crim. P. 609.

focus upon personal knowledge or experience rather than scientific foundations." Id. at 850 (quotations omitted).  Officer Clay's extensive service record related to drug investigations, consisting of twenty-eight years of law enforcement experience and hundreds of narcotics investigations, makes plain that his testimony based on experience was reliable and would have satisfied a more detailed, individualized evaluation.  Under these circumstances, the district court's decision to permit his testimony was not an abuse of discretion.

Second, Peebles argues that Officer Clay's testimony that drug traffickers have a preference to use young female couriers without extensive criminal histories was impermissible drug courier profile testimony.  We have previously disallowed the introduction of drug courier profiles as substantive evidence because it "involves nothing more than the introduction of investigative techniques that law enforcement officers use to identify potential drug couriers." United States v. Schwarck, 719 F.3d 921, 924 (8th Cir. 2013).  We have serious reservations that Officer Clay's testimony is drug courier profile evidence. Douglas's testimony detailing her role in the conspiracy was already before the court. Officer Clay provided background information explaining the habits of drug traffickers and couriers.  His testimony was likely admissible as *modus operandi* evidence. See United States v. Jeanetta, 533 F.3d 651, 657–58 (8th Cir. 2008) (if the importance of evidence "would not necessarily be apparent to a lay observer," expert testimony may be necessary to explain its significance in "the world of drug dealing").

Even if we accepted Peebles's characterization, the evidence was admissible. Our exclusionary rule was designed to protect criminal defendants from being identified as drug couriers merely based on their profile.  Similar concerns are not present when the evidence is offered to establish that someone other than the defendant was potentially a drug courier–as in this case, where the evidence was offered to establish that Douglas fit the profile of a drug courier.  Additionally, any

error in allowing Officer Clay's testimony would be harmless due to Douglas's direct testimony about her role as a courier for Peebles .

4.  *Limitation of Cross-Examination Regarding Past Instances of Untruthfulness*

Finally, Peebles asserts the district court erred when it precluded him from questioning two police officers, who were part of the group of drug task force officers assigned to monitor 5911A Highland on April 2nd, about their involvement in the 2006 World Series Ticket Scandal.  Federal Rule of Evidence 608(b) provides that the district court has discretion when determining if a specific instance of witness untruthfulness may be inquired into on cross-examination.  Cross-examination may be limited or denied if the probative value of the evidence is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."  United States v. Beck, 557 F.3d 619, 621 (8th Cir. 2009).

A limitation on cross-examination does not violate the Sixth Amendment's Confrontation Clause unless the defendant demonstrates that a reasonable jury might have received a significantly different impression of a witness's credibility if counsel had been allowed to pursue the proposed line of cross-examination.  United States v. Jones, 728 F.3d 763, 766 (8th Cir. 2013).  We have previously affirmed exclusion of the very evidence Peebles sought to introduce in this case.  Beck, 557 F.3d at 620–21.  While  questioning the officers about the scandal may have held some probative value, in light of the nature of the officers' testimony and the corroboration of their testimony by Special Agent Witzman it is unlikely a reasonable jury would have "received a significantly different impression" of their credibility if the evidence had been allowed.

## III.

For the foregoing reasons, we affirm Peebles's convictions.

_____