# United States Court of Appeals

### For the Eighth Circuit

_____

No. 21-2683

_____

United States of America

*Plaintiff - Appellee*

v.

Marcus Ray Nelson

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Cape Girardeau

_____

Submitted: June 17, 2022
Filed: October 20, 2022

_____

Before LOKEN and KELLY, Circuit Judges, and MENENDEZ,[1] District Judge.

_____

MENENDEZ, District Judge.

A jury convicted Marcus Nelson of conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine under 21 U.S.C. §

_____

[1]The Honorable Katherine M. Menendez, United States District Judge for the District of Minnesota, sitting by designation.

841(a)(1). The district court[2] sentenced him to a term of 300 months in prison. Nelson appeals his conviction, and we affirm.

## I.    Background
### A. Underlying Facts

On March 19, 2019, a Drug Enforcement Administration (DEA) task force officer received a tip that Gino Wells Sr. was expecting a large shipment of methamphetamine. Later that day, law enforcement officials went to Wells's home to speak with him. Marcus Nelson was inside the house with several others when law enforcement arrived. While speaking with Wells Sr. in the driveway, officers heard a loud thud come from the side of the house. As they approached the source of the thud, the officers found a black duffel bag. When asked, Wells Sr. informed law enforcement that the duffel bag contained eleven pounds of methamphetamine. Nelson denied having any knowledge of a duffel bag or its contents, and later argued that he had been at the house to shoot a music video.

Based on information provided by Wells Sr., law enforcement officials obtained a search warrant for Nelson's home where they found two digital scales, plastic zipper sealed baggies, containers of marijuana cigarettes, and a cellular flip phone. No other controlled substances were found during the search. Additionally, law enforcement searched the duffel bag, which contained 5.28 kilograms of methamphetamine and 333.57 grams of heroin.

### B. Procedural History

Later in 2019, a federal grand jury indicted Nelson on one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1); one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1); and one count of possession with intent to distribute heroin in violation of 18 U.S.C. § 841(a)(1). Nelson pled not guilty and proceeded to a jury trial. Gino

---

[2]The Honorable Stephen N. Limbaugh Jr., United States District Court for the Eastern District of Missouri.

Wells Sr. pled guilty to similar charges pursuant to a cooperation agreement with the government and agreed to testify against Nelson.

During trial, the government presented several witnesses. To begin, Deputy Taylor Tinsley testified about a traffic stop and arrest involving Nelson in December 2018. A search of the vehicle Nelson was driving revealed a bag containing a half-pound of methamphetamine, a bag containing marijuana and cash, and a case containing a gun. Around a thousand dollars were seized during a search of Nelson's person. The government also called Pamela Buchanan, who is on the Southeast Missouri Drug Task Force, to the stand. Ms. Buchanan testified that Nelson made several calls that were recorded by the jail system. During the calls, Nelson allegedly asked other individuals to "take" the charges for the methamphetamine.

The jury later heard testimony from Corey Mitchell. Mr. Mitchell was the DEA task force officer who received an anonymous tip regarding Wells Sr.'s anticipated drug shipment. Officer Mitchell described the events that occurred at Gino Wells Sr.'s home in March 2019. He also explained that Wells Sr. cooperated with law enforcement and provided information leading to the search warrants for the duffel bag and Nelson's home.

Gino Wells Sr. testified at length. He acknowledged that he expected to receive a reduced sentence in exchange for testifying against Nelson. Wells Sr. described his and Nelson's drug-trafficking activities over prior years. Additionally, he testified that he met with Nelson the night before Nelson was arrested in 2018. Wells Sr. testified that Nelson was arranging a drug deal and asked Wells to front him the half-pound he needed to complete the deal.

Wells Sr. then answered questions regarding the events from spring 2019 that led to the federal charges. He was specifically asked about a text message on his cellular flip phone. The government never disclosed the contents of the cell phone to Nelson. Nelson's counsel objected to the testimony due to the lack of disclosure. The district court overruled the objection, allowing the testimony because the cell

phone itself was introduced earlier in the trial without objection. However, the district court instructed the government to allow Nelson to view the text message during lunch.

After lunch, Wells Sr. testified that the disputed text message was from Nelson to him. He then read the message to the jury. The message said, "He's sending 30." Wells Sr. also testified that he had been present at Nelson's home about a week prior to the March 2019 incident while Nelson was meeting with suppliers from Texas.

Gino Wells Jr. also testified at trial. He stated that he was inside the house when officers arrived on March 19th. According to his testimony, Nelson "r[an] around looking for a black duffel bag." Wells Jr. also informed the jury that he personally observed Nelson grab the bag and throw it out of a window facing the woods. Nelson allegedly turned to Wells Jr. and said "Whoop, there's your dad some more charges."

After the government rested its case, the defense announced it would not present evidence. Nelson's counsel then moved for judgment of acquittal, alleging there was insufficient evidence to support a guilty verdict. The district court denied the motion, noting that there was "ample evidence to convict in the case." Finally, in its closing argument, the defense primarily focused on attacking Wells Sr.'s credibility, asserting his testimony was "bought and paid for by the government" and he could not be trusted. Defense counsel also mentioned the text message at issue, stating "[t]hat text message on that phone doesn't say anything. It doesn't corroborate anything. It doesn't say pounds. It doesn't say anything."

The jury found Nelson guilty of conspiracy to distribute methamphetamine and possession with intent to distribute methamphetamine and acquitted him of possession with intent to distribute heroin. He was sentenced to a term of 300 months' imprisonment. Nelson does not challenge his sentence on appeal.

## II.    Discussion
### A. Motion for Judgment of Acquittal

Nelson first challenges the denial of his motion for judgment of acquittal. Under Federal Rule of Criminal Procedure 29(a), a district court must "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." *United States v. Broeker*, 27 F.4th 1331, 1335 (8th Cir. 2022) (citation omitted). Nelson argues the government's evidence at trial was insufficient for a reasonable jury to find, beyond a reasonable doubt, that he was guilty of conspiracy to distribute methamphetamine and distribution of methamphetamine.

When reviewing a district court's denial of a motion for acquittal, "[w]e apply the same standard of review to the district court's ruling on a motion for judgment of acquittal as we do to a sufficiency of the evidence challenge." *Id.* (quoting *United States v. Aungie*, 4 F.4th 638, 643 (8th Cir. 2021)). And we "view[] the entire record in the light most favorable to the government, resolv[ing] all evidentiary conflicts accordingly, and accept[ing] all reasonable inferences supporting the jury's verdict." *Id.* When reviewing a motion for acquittal, "we cannot pass upon the credibility of witnesses or the weight to be given their testimony, as this is uniquely within the province of the trier of fact, and entitled to special deference*." United States v. Hassan*, 844 F.3d 723, 726 (8th Cir. 2016) (citing *United States v. Goodale*, 738 F.3d 917, 923 (8th Cir. 2013)). We will only reverse a district court's denial of a defendant's motion for acquittal "if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt." *United States v. Gonzalez*, 826 F.3d 1122, 1126 (8th Cir. 2016) (quoting *United States v. Cacioppo*, 460 F.3d 1012, 1021 (8th Cir. 2006)).

To convict a defendant of conspiracy to distribute methamphetamine, the government must prove: "1) the existence of an agreement among two or more people to achieve an illegal purpose; 2) the defendant's knowledge of the agreement; and 3) that the defendant knowingly joined and participated in the agreement." *United States v. Ramirez-Maldonado*, 928 F.3d 702, 707 (8th Cir. 2019) (quoting *United States v. Peebles*, 883 F.3d 1062, 1067–68 (8th Cir. 2018)). And to convict a

defendant of possessing illegal drugs with the intent to distribute, the government must prove the defendant 1) "knowingly possessed" the drug in question, and 2) "intended to distribute it." *Peebles*, 883 F.3d at 1068.

The evidence presented by the government was sufficient to allow a reasonable jury to find Nelson guilty on both counts. Gino Wells Sr. provided ample testimony regarding Nelson's drug-related activities. Nelson argues that the testimony from Wells Sr. and his son was self-serving, and therefore could not allow a reasonable jury to find him guilty. However, "[w]hether a witness will receive a sentence reduction in exchange for his testimony[] is relevant in assessing the witness's credibility." *United States v. Espino*, 317 F.3d 788, 794 (8th Cir. 2003) (citing *United States v. Roan Eagle*, 867 F.2d 436, 443–44 (8th Cir. 1989)). And we must leave credibility determinations to the jury. *Hassan*, 844 F.3d at 726.

The testimony from Deputy Tinsley, Ms. Buchanan, and Officer Mitchell thoroughly corroborated the testimony of the Wellses. Deputy Tinsley provided insight regarding Nelson's prior drug-related activity, while Ms. Buchanan informed the jury about Nelson's jail phone calls asking others to take the charges for the methamphetamine found in the car he was driving. And Officer Mitchell described the March 2019 events along with the subsequent search warrants of Nelson's home and the duffel bag.

Overall, the evidence, taken in the light most favorable to the verdict, supports the conclusion that Nelson had a role in the drug conspiracy and possessed methamphetamine with the intent to distribute. Therefore, the district court did not err in denying Nelson's motion for judgment of acquittal.

## B. The Undisclosed Text Message

Nelson also argues the district court erred in allowing Wells Sr. to read a text message from his phone while on the stand when that message had not been disclosed to the defense ahead of trial. In his brief, Nelson alleged that the

government's conduct constitutes a *Brady* violation.[3] However, at oral argument, Nelson's counsel acknowledged he mischaracterized the issue, and pivoted to argue that the government's conduct in fact constituted a Rule 16 discovery violation instead. We will address the government's conduct under Rule 16.[4]

Rule 16 of the Federal Rules of Criminal Procedure requires the government to disclose any relevant written or recorded statement made by the defendant, and the government conceded at oral argument that the text at issue should have been disclosed prior to trial. *Fed. R. Crim. P*. 16(a)(1)(B)(i); *United States v. Bull*, 8 F.4th 762, 768 (8th Cir. 2021). However, not every discovery violation requires exclusion of evidence. "A district court does not abuse its discretion in allowing the introduction of evidence disclosed in a dilatory fashion unless that evidence substantially prejudiced the defendant." *United States v. Beck*, 557 F.3d 619, 622 (8th Cir. 2009) (citation omitted) (holding that the admission of bloody towel did

---

[3]*Brady v. Maryland*, 373 U.S. 83 (1963) (holding that the government violates a defendant's due process rights if it suppresses evidence favorable to the defendant that is material to guilt or punishment).

[4]The parties agree that *Brady* is inapposite because the text message at issue is in no way exculpatory. The government suggests Nelson waived his right to argue a Rule 16 violation because he only relied on *Brady* in his brief. It is true that "[c]laims not raised in an opening brief are deemed waived." *Montin v. Moore*, 846 F.3d 289, 295 (8th Cir. 2017) (quotation omitted). It is also true that a Rule 16 challenge is far better suited to the facts of this case. However, while Nelson's counsel mischaracterized the appropriate discovery violation, he still acknowledged there was a discovery violation generally, stated the relevant facts, and put the government on broad notice of the issue. And the government argued in its brief that Nelson should lose even under Rule 16. We decline to hold Nelson's mischaracterization of the appropriate discovery violation in his opening brief against him under the circumstances here. *See U.S. v. Flores-Mireles*, 112 F.3d 337, 340 (8th Cir. 1997) (analyzing defendant's argument under the Rule 16 abuse of discretion standard even though the defendant's opening brief framed the government's actions as a *Brady* violation). We are especially hesitant to rely on waiver here, where the government failed to meet its own important discovery obligations.

not amount to unfair surprise where the evidence merely corroborated the victim's testimony); *United States v. Flores-Mireles*, 112 F.3d 337, 340 (8th Cir. 1997) (holding there was no abuse of discretion where the district court declined to exclude testimony from an informant who was not identified to the defendant before trial).

We find that the district court did not abuse its discretion in allowing Wells Sr. to read the undisclosed text message on the stand. The court allowed Nelson's counsel to review the text message over lunch. And Nelson's counsel did not ask for more time to view the message, ask for a continuance, or even renew his objection following that review. While this process is not what Rule 16 envisions or requires, the defense did have an opportunity to examine the text message and cross-examine Wells Sr. about it at trial.

Further, Nelson was not substantially prejudiced by the introduction of the text message. As defense counsel's closing statement acknowledged, "th[e] text message … doesn't say anything. It doesn't corroborate anything. It doesn't say pounds. It doesn't say anything." While the message lent weight to the allegation that Nelson arranged a drug deal to distribute methamphetamine, the text itself was not clear. Finally, as outlined above, there was substantial evidence aside from the text to otherwise prove Nelson's guilt. For these reasons, the district court did not abuse its discretion.[5]

---

[5]Though the district court did not err here, we strongly discourage government from overlooking its discovery obligations in future cases. We "in no way condone this dereliction of duty." *Flores-Mireles*, 112 F.3d at 340. A failure to disclose evidence, even an inadvertent one as we seem to have here, undermines the purpose and spirit of Rule 16 and can be unfair to criminal defendants. Rule 16(a)(1) is meant to contribute to the "fair and efficient administration of criminal justice by providing the defendant with enough information to make an informed decision as to plea; by minimizing the undesirable effect of surprise at the trial; and by otherwise contributing to an accurate determination of the issue of guilt or innocence." Fed. R. Crim. P. 16(a) advisory committee's note to 1974 amendment.

### III.   Conclusion

For the forgoing reasons, we affirm Nelson's conviction.

_____