# United States Court of Appeals
## For the Eighth Circuit

_____

No. 23-3342

_____

United States of America

*Plaintiff - Appellee*

v.

Kathan Daniel Wiley

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: September 25, 2024
Filed: December 6, 2024

_____

Before BENTON, ARNOLD, and KOBES, Circuit Judges.

_____

BENTON, Circuit Judge.

Kathan Daniel Wiley was convicted of conspiracy to distribute a mixture and substance with a detectable amount of fentanyl (Count One) and possession with intent to distribute a mixture and substance with fentanyl resulting in serious bodily injury (Count Two), in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846.

The district court[1] denied his motion for judgment of acquittal. He appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

On October 30, 2021, Davenport fire and police officers responded to a call about an 18-month-old who ingested pills. His mother, Jessica Brady, tried to take the baby to the hospital, but then called an ambulance to take him there.

At the hospital, officers met with her. She said that Wiley, the father, told her that the baby ate pills left at the house by Wiley's friend. Brady testified that although Wiley originally said his friend left the pills, he later said he got them from a dealer.

Other testimony indicated Wiley apparently got them within the hour before the baby's overdose. The baby—after respiratory depression, cardiac arrest, and multiple doses of Narcan—survived. Brady testified that Wiley had been distributing the fentanyl pills for months.

The jury found Wiley guilty on both counts. The district court sentenced him to a below-guidelines sentence of 240 months on Count One and 324 months on Count Two, to be served concurrently.

## II.

This court reviews "the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." *United States v. Polk*, 715 F.3d 238, 245 (8th Cir. 2013). Reversal for insufficient evidence

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

is warranted only if this court concludes that "no reasonable jury could find all the elements beyond a reasonable doubt." *United States v. Wiest*, 596 F.3d 906, 910 (8th Cir. 2010). "A conviction may be based on circumstantial as well as direct evidence. The evidence need not exclude every reasonable hypothesis except guilt." *United States v. Seals*, 915 F.3d 1203, 1205 (8th Cir. 2019).

Wiley argues that the evidence was insufficient on the conspiracy charge because the government did not establish he "voluntarily and intentionally joined in an agreement with regard to the distribution of fentanyl." Specifically, he asserts that because he was an addict, the "purpose of his possession is to support his addiction" as opposed to a "shared conspiratorial purpose." He concludes that the jury had insufficient evidence to find he had an agreement with the "actual conspirators."

"To establish a drug conspiracy, the government must prove the existence of an agreement between two or more persons to violate federal narcotics law." *United States v. Smith*, 450 F.3d 856, 860 (8th Cir. 2006). An agreement requires "a showing the defendant was aware of the purposes of the agreement and voluntarily participated in the agreement." *Id*. "Direct or circumstantial evidence may provide the basis for a conspiracy conviction." *United States v. Castro-Gaxiola*, 479 F.3d 579, 581 (8th Cir. 2007). "Evidence of a conspiracy will often be circumstantial due to a conspiracy's necessary aspect of secrecy." *Id.* "Evidence may be implied by surrounding circumstances or by inferences from the actions of the parties." *Id.*

Wiley's Facebook messages supported a jury finding of a conspiracy beyond a reasonable doubt. Wiley exchanged more than 80 messages with a dealer over a three-day period with the clear intent to buy drugs. Wiley offered to buy "50 [pills] for 750" and tried to coordinate plans for the transaction. Brady testified that, around the time of the messages, Wiley received a check for $750, deposited directly into her bank account. She estimated Wiley received 100 pills in exchange for the $750—which the couple fought over because she needed the money for rent. Other messages showed that Wiley owed the dealer money for an earlier transaction,

supporting "a finding that they shared a conspiratorial purpose to advance other transfers." *United States v. Slagg*, 651 F.3d 832, 842 (8th Cir. 2011). In other Facebook messages, Wiley explicitly advertised "Perks" and "Perk 30s" for sale to several others, often packaging the offer with other narcotics, including "acid," "Xans" (Xanax), and Vicodin.

While the Facebook messages may not show an express agreement, the law does not require one. *See United States v. Adams*, 401 F.3d 886, 894 (8th Cir. 2005) (finding "the government need only establish a tacit understanding between the parties."). "In cases charging conspiracy, the evidence is often circumstantial: because the nature of conspiracy entails secrecy, the agreement and members' participation in it must often be established by way of inference from the surrounding circumstances." *United States v. Williams*, 910 F.3d 1084, 1090 (8th Cir. 2018). True, there is no "precise" point when one can say a person entered a conspiracy. *United States v. Conway*, 754 F.3d 580, 591 (8th Cir. 2014). But like the defendants in *Conway*, Wiley was not a "one-time buyer who purchased a small amount" of fentanyl for personal use. *Id.* at 592. He was a buyer and seller of fentanyl pills for months. Brady's testimony, coupled with the Facebook messages advertising the pills, are sufficient evidence that Wiley entered into a conspiracy to violate federal narcotics laws.

Wiley's insufficiency argument also fails for Count Two—possession with intent to distribute resulting in serious bodily injury. He asserts that the evidence did not support a conviction because the fentanyl that the baby ingested was intended for Wiley's personal use, not for distribution.

Wiley argues that it "could not be established that the fentanyl ingested by Mr. Wiley's son was fentanyl that he intended to distribute but rather, fentanyl he intended to use himself to satisfy his need for the highly addictive drug." Wiley emphasizes his drug addiction, that he sometimes took some of the drugs for his personal use, and efforts to prevent children from accessing his narcotics—all of

which Brady confirmed through testimony. The "elements" in the jury instruction were:

> ***One,*** on or about October 30, 2021, the Defendant possessed a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance;
>
> ***Two,*** the Defendant knew the substance he possessed was a controlled substance;
>
> ***Three,*** the Defendant intended to distribute some or all of the controlled substance to another person;
>
> ***Four,*** K.M. suffered serious bodily injury; and
>
> ***Five,*** K.M. would not have suffered serious bodily injury but for the use of the fentanyl the Defendant possessed with the intent to distribute.

Wiley argues that the "some or all" language in element Three, along with the notes from the model instructions, "makes it clear that the fentanyl which caused bodily injury must be from the portion that a defendant intended to distribute and not the remainder." To the contrary, the plain language of "some or all" says exactly the opposite—element Three requires that only *some* of the narcotics in Wiley's possession must be intended for distribution. The instruction means that the jury should acquit if the drugs were intended only for personal use, such as in a personal stash. *See Eighth Circuit Manual of Model Jury Instructions (Criminal) 6.21.841A.1 (Short) (2021)* ("It is uncertain whether, in Section 841(a)(1) possession with intent to distribute cases, drugs intended only for personal use are included in the drug quantity.") *citing **United States v. Fraser***, 243 F.3d 473, 476 (8th Cir. 2001) (finding that in determining relevant conduct under the sentencing guidelines for a Section 841(a)(1) offense, drugs possessed for solely personal use should not be included.).

The instruction implements the statute Wiley violated. He bought a large quantity of pills containing fentanyl for the purpose of distribution. 21 U.S.C. § 841(b)(1)(C) punishes the (a) knowing or intentional possession with intent to

distribute, and (b) "death or serious bodily injury result[ing] from the *use of such substance*" (emphasis added). The "use" is broad, capturing *any* use of the substance that results in serious bodily injury, including the baby's accidental ingestion of Wiley's fentanyl pills. *See United States v. Wysinger*, 64 F.4th 207, 216 (4th Cir. 2023) (finding "nothing in [841(b)(1)(c)] requires a jury to find the defendant actually delivered the drug to the victim in order for the increased penalty to apply.").

Wiley also argues that element Five requires that the "fentanyl causing the bodily injury must be the fentanyl possessed with intent to be distributed." Wiley says: "there can be no doubt Mr. Wiley had no intention to distribute any fentanyl *to* [the baby] even if he did intend to distribute it to others" (emphasis added). The jury instruction does not require Wiley's intent to distribute fentanyl to his own child. A paragraph of the instruction requires the opposite: "The Government need not prove that the Defendant intentionally transferred the fentanyl to [baby] K.M., so long as the Government proves beyond a reasonable doubt that the fentanyl possessed with intent to be distributed by the Defendant was the same fentanyl that resulted in the serious bodily injury of [baby] K.M."

The evidence here supports a conviction for possession with intent to distribute a mixture and substance containing fentanyl resulting in serious bodily injury from the use of such substance. At the time of the baby's overdose, Wiley was under pressure to support himself and his family. In an October 29 Facebook chat, Wiley told Brady he would obtain fentanyl pills the next day. His intent for those pills is clear from Brady's testimony—Wiley wanted to "flip" the pills to make money for rent and other expenses. The next morning, on October 30, Wiley met with his dealer. Brady testified that the co-conspirator has sold to Wiley before. Wiley bought a golf-ball-sized bag of pills. He was the only person home with the baby that day. The baby ingested the pills within an hour after Wiley met with the dealer. His Facebook messages show he was also under pressure to repay his dealer for the loan of the pills. The jury also knew he offered to sell these pills to at least three potential buyers in the days after the baby's overdose.

A reasonable jury could find Wiley guilty of possession with intent to distribute the fentanyl the baby ingested. *See United States v. Hamilton*, 332 F.3d 1144, 1149 (8th Cir. 2003) ("[W]e will uphold the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt.").

## III.

Wiley argues that the district court erred in applying the U.S.S.G. § 2D1.1(b)(13) enhancement. This court reviews de novo the district court's interpretation of the guidelines, and for clear error its factual findings. *United States v. Fisher*, 420 Fed. Appx. 641, 643 (8th Cir. 2011). Under the advisory guidelines, sentencing judges are required to find sentence-enhancing facts by a preponderance of the evidence. *United States v. Pirani*, 406 F.3d 543, 551 n. 4 (8th Cir.2005) (en banc).

A four-level enhancement to a defendant's base offense level applies if he "knowingly misrepresented or knowingly marketed as another substance a mixture or substance containing fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide) or a fentanyl analogue." **U.S.S.G. § 2D1.1(b)(13).**

Wiley advertised his drugs by several names—"perks," "perk 30s," and "perk 30"—without any reference to the fentanyl in them. After overdosing himself on similar pills, Wiley knew the pills contained fentanyl.

The district court found that Wiley's overdose indicates he conspired to distribute pills that were not legitimate Percocet prescription pills. Several witnesses confirmed what Wiley knew. *See* **Fed. R. Civ. P. 52(a)(6)** ("the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility."); *United States v. Williams*, 605 F.3d 556, 570 (8th Cir. 2010) (Clear error exists "only when we are left with the definite and firm conviction that a mistake has been committed.").

By advertising the pills as "perks," the accepted name for prescription Percocet, with the knowledge that they were not, Wiley knowingly marketed a substance containing fentanyl as another substance. The district court did not err in applying a four-level enhancement under § 2D1.1(b)(13).

IV.

Wiley suggests that the district court failed to correctly weigh the § 3553(a) factors, resulting in a sentence that is substantively unreasonable. This court reviews the substantive reasonableness of a sentence under a deferential abuse of discretion standard. *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

Wiley dedicates one sentence to the district court's failure to "give due consideration to the fact that Mr. Wiley never intended to distribute fentanyl to his son." But the district court considered each § 3553(a) factor, including his challenging life experiences. The court considered the seriousness of the offense, including the fact that K.M. likely ingested more than one pill containing fentanyl, and Wiley's "serious efforts to obstruct/undermine the criminal justice system." Considering all the factors, the district court sentenced Wiley to 324 months—a downward variance from the advisory guideline range of life imprisonment. The court did not abuse its discretion. *See id.* at 464 ("It will be the unusual case when we reverse a district court sentence-whether within, above, or below the applicable Guidelines range-as substantively unreasonable.")

\* \* \* \* \* \* \*

The judgment is affirmed.

_____