# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-2470/24-2471

_____

United States of America

*Plaintiff - Appellee*

v.

Johnnie A. Cannon

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa

_____

Submitted: April 14, 2025
Filed: December 2, 2025

_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

A jury found Johnnie A. Cannon guilty of one count of conspiracy to distribute methamphetamine and three counts of distribution and aiding and abetting the distribution of methamphetamine. After the jury returned its verdict, the district

court[1] revoked Cannon's supervised release from a prior conviction. Cannon now appeals his convictions and the revocation of his supervised release. We affirm the district court.

## I. Background

In early 2023, law enforcement began working with MS, a confidential informant. MS identified AP — who lived in the Sioux City, Iowa, area — as one of his methamphetamine suppliers. MS told law enforcement AP obtained some of her methamphetamine supply from a man known as "Arkansas," who law enforcement believed to be Cannon. Investigators used MS to conduct three controlled buys of methamphetamine from AP. At trial, AP testified she purchased all the methamphetamine sold during the controlled buys from Cannon.

While MS was inside AP's residence during the first controlled buy, law enforcement observed a tan Ford Crown Victoria (the Ford) driven by a black male arrive outside. Although the Ford was not registered in Cannon's name, law enforcement believed he regularly used the vehicle. While the Ford was outside AP's residence, officers observed AP go outside and meet with the driver of the Ford on the porch. MS then left AP's residence and provided law enforcement with a quarter pound of methamphetamine he purchased from AP.

During the second controlled buy, law enforcement observed Cannon arrive at AP's residence in a small white SUV. Cannon picked up AP's roommate and then left. Shortly thereafter, Cannon returned and the roommate exited the vehicle and went back and forth between the white SUV and AP's residence. Surveillance photos show the white SUV outside AP's residence during these interactions. Once Cannon returned, law enforcement sent MS inside AP's residence to conduct the

---

[1]The Honorable Leonard T. Strand, United States District Judge for the Northern District of Iowa.

controlled buy. MS returned to law enforcement with approximately a half pound of methamphetamine he bought from AP.

Before the third and final controlled buy, law enforcement observed Cannon arrive at AP's residence driving the Ford. After he parked, AP exited her apartment, got into the passenger seat of the Ford, and they drove around the parking lot. AP then got out of the Ford with a small black bag and returned to her residence. Surveillance photos show these interactions. MS then conducted the controlled buy and gave law enforcement a small black bag containing approximately a half pound of methamphetamine.

After AP exited the Ford, Cannon began to drive away. Cannon did not get far before law enforcement pulled him over. During the traffic stop, officers seized $3,250 in cash, $3,000 of which was determined to be serialized money from the third controlled buy. Cannon was then taken into custody, given *Miranda* warnings, and interviewed by officers. *See Miranda v. United States*, 385 U.S. 436 (1966). During the interview, Cannon admitted to having multiple methamphetamine sources, both in and out of the state, purchasing and distributing multiple quantities of methamphetamine, and dealing with AP for approximately a year. Additionally, Cannon specifically admitted to distributing methamphetamine to AP on March 14.

A grand jury indicted Cannon on one count of conspiring to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846, and 851, and three counts of distributing and aiding and abetting the distribution of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), 851; 18 U.S.C. § 2. During jury selection, Cannon's trial counsel made a *Batson* challenge alleging there were no black people on the prospective jury panel. *See Batson v. Kentucky*, 476 U.S. 79 (1986). The magistrate judge,[2] while presiding over jury selection with the parties' consent, determined a *Batson* challenge was not

[2]The Honorable Kelly K.E. Mahoney, Chief United States Magistrate Judge for the Northern District of Iowa.

proper because no jurors had yet been struck. Even so, the magistrate judge offered to question the prospective jurors on the topic of race and allowed Cannon's trial counsel to do the same.

At the close of evidence, Cannon moved for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29(a). The district court denied the motion. The case was submitted to the jury, which found Cannon guilty on all counts. Cannon timely renewed his motion for judgment of acquittal and alternatively moved for a new trial and arrest of judgment pursuant to Federal Rules of Criminal Procedure 29, 33, and 34, respectively. The district court denied the motion on all grounds and sentenced Cannon to 262 months of imprisonment for his new convictions. The district court also revoked Cannon's supervised release and sentenced him to an additional 37 months of imprisonment for violating the terms of his supervised release.

## II. Discussion

Cannon appealed both his convictions and the revocation of his supervised release. However, he focuses solely on his convictions, arguing: (1) his Sixth Amendment right to a jury drawn from a fair cross-section of the community was violated; (2) the admission of his prior conviction was improper under Rule 404(b); (3) there was insufficient evidence for a jury to convict him of any of the four counts; and (4) his trial counsel was ineffective. We address each argument in turn.

### A. Sixth Amendment Right to a Representative Jury

Cannon, who is black, argues his Sixth Amendment right to a jury drawn from a fair cross-section of the community was violated because there were no black people on the panel of prospective jurors. We review such challenges de novo. *United States v. Reed*, 972 F.3d 946, 953 (8th Cir. 2020).

To establish that his right to a jury drawn from a fair cross-section of the community was violated, Cannon must show: (1) the allegedly excluded group "is a 'distinctive group' in the community"; (2) the representation of this group in venires is not fair and reasonable as related to the number of such persons in the community; and (3) the underrepresentation is caused by "systematic exclusion of the group in the jury-selection process." *Duren v. Missouri*, 439 U.S. 357, 364 (1979). But as Cannon concedes, this right "does not guarantee a defendant a proportionate number of his racial group on the jury panel or the jury which tries him; it merely prohibits deliberate exclusion of an identifiable racial group from the jury selection process." *United States v. Burrage*, 75 F.4th 953, 957 (8th Cir. 2023) (quoting *United States v. Jefferson*, 725 F.3d 829, 835 (8th Cir. 2013)). As follows, "it is the number of [black people] in the jury pool, not the number who showed up for jury selection in a particular case, that is relevant to assessing the merits of [Cannon]'s fair cross-section challenge." *Id.*

Cannon did not challenge the district court's jury selection plan at or before trial and provides no evidence or substantial argument that the district court's jury selection plan systematically excludes black people.[3] The only "evidence" Cannon has presented are conclusory statements relating to the racial composition of the

[3]Citing cases from the Iowa Supreme Court, Cannon appears to challenge the practice of selecting potential jurors from voter registration and driver's license lists. Since at least 2017, the United States District Court for the Northern District of Iowa has selected its potential jurors from voter registration, motor vehicle operator, and non-driver identification card holder lists. *Jury Selection Plan*, United States District Court for the Northern District of Iowa 2-3 (Jan. 26, 2017), www.iand.uscourts.gov/sites/iand/files/Jury%20Selection%20Plan.pdf. We have consistently upheld the constitutionality of these and similar methods. *United States v. Einfeldt*, 138 F.3d 373, 379 (8th Cir. 1998) (upholding jury selection plan drawing potential jurors from voter registration lists in the Northern District of Iowa); *United States v. Erickson*, 999 F.3d 622, 628–29 (8th Cir. 2021) (collecting cases stating voter registration lists survive constitutional scrutiny unless there is a separate showing of systematic exclusion of the distinct group); *Reed*, 972 F.3d at 953–54 (upholding a jury selection plan drawing potential jurors from voter rolls, driver's license lists, and state identification card lists).

potential jurors in his particular case. As we have held, absent evidence of a defect in the manner in which jurors are selected, a cross-sectional challenge cannot be sustained. *See Jefferson*, 725 F.3d at 835. Accordingly, Cannon's fair cross-section challenge was properly denied.

## B. Admission of Prior Drug Conviction

We next turn to Cannon's argument that the district court erred by admitting evidence of his prior felony convictions and photographs of him with uncharged firearms. *See* Fed. R. Evid. 404(b). We review a trial court's admission of evidence under Federal Rule of Evidence 404(b) for abuse of discretion. *United States v. Drew*, 9 F.4th 718, 722 (8th Cir. 2021).

Although Rule 404(b) prohibits the use of prior bad acts as propensity evidence, prior bad acts may be used to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1), (2).

> To be admissible, Rule 404(b) evidence "must (1) be relevant to a material issue raised at trial, (2) be similar in kind and close in time to the crime charged, (3) be supported by sufficient evidence . . . that the defendant committed the other act, and (4) not have a prejudicial value that substantially outweighs its probative value."

*United States v. Johnson*, 439 F.3d 947, 952 (8th Cir. 2006) (quoting *United States v. Kern*, 12 F.3d 122, 124–25 (8th Cir. 1993)). We have long held Rule 404(b) "is a rule of inclusion, such that evidence offered for permissible purposes is presumed admissible absent a contrary determination." *See, e.g., Johnson*, 439 F.3d at 952.

Relying almost exclusively on precedent from our sister circuits, Cannon urges us to change our interpretation of Rule 404(b). He argues our characterization of Rule 404(b) as a rule of inclusion "undermines" the purpose of the rule. Whatever the merit, we need not address Cannon's argument because we are bound by our

established precedent. *See Drew*, 9 F.4th at 724 (citing *Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011)).

In his reply, Cannon relies on *United States v. Cotton*, where we explained Rule 404(b) "requires more" than a "[m]ere recitation of the Rule without an accompanying case-specific analysis." 823 F.3d 430, 435 (8th Cir. 2016). Cannon argues the government and district court did just that. Not so. The district court engaged in a well-reasoned analysis of the utility of Cannon's prior conviction to prove knowledge and intent to conspire to distribute methamphetamine. *See United States v. Grady*, 639 F.3d 489, 494 (8th Cir. 2011) (holding a prior conviction to distribute drugs as relevant under Rule 404(b) to show knowledge and intent to commit conspiracy to distribute drugs). Seeing no error in the district court's analysis, we affirm.

## C. Sufficiency of the Evidence

Next, we address Cannon's argument that his convictions were not supported by sufficient evidence. We review a challenge to the sufficiency of the evidence "de novo, 'construing the evidence in the light most favorable to the verdict.'" *United States v. Jackson*, 142 F.4th 1095, 1101 (8th Cir. 2025) (quoting *United States v. Jirak*, 728 F.3d 806, 811 (8th Cir. 2013)). "This is a 'strict' standard," so "[w]e do not lightly overturn a jury's verdict." *Id.* (quoting *United States v. Edelmann*, 458 F.3d 791, 811 (8th Cir. 2006)). "'We cannot pass upon the credibility of witnesses or the weight to be given their testimony,' and 'will only reverse a district court's denial of a defendant's motion for acquittal if there is no interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'" *Id.* (cleaned up) (quoting *United States v. Nelson*, 51 F.4th 813, 817 (8th Cir. 2022)).

Much of Cannon's argument attacks the credibility and consistency of the government's witnesses, arguing the witnesses are not credible because they cooperated with the government for the possibility of reduced sentences. Cannon is

correct this "is relevant in assessing the witness[es'] credibility." *Nelson*, 51 F.4th at 818 (quoting *United States v. Espino*, 317 F.3d 788, 794 (8th Cir. 2003)). But assessing witness credibility "is uniquely within the province of the trier of fact," not the appellate court. *Id.* at 817 (quoting *United States v. Hassan*, 844 F.3d 723, 726 (8th Cir. 2016)). Accordingly, we will not second guess the jury's credibility determinations.

Cannon also argues there was insufficient evidence to support his convictions because the government did not present physical evidence of the distribution and conspiracy. Rather, Cannon claims the evidence shows he was, at most, in physical proximity to methamphetamine, and physical proximity alone is insufficient to prove he knowingly distributed and conspired to distribute methamphetamine. *See generally United States v. Scofield*, 433 F.3d 580, 585–87 (8th Cir. 2006). We disagree. Cannon is correct law enforcement did not take photos or videos during the first controlled buy and did not present any DNA or fingerprint evidence. But "[e]vidence of a conspiracy will often be circumstantial due to a conspiracy's necessary aspect of secrecy." *United States v. Wiley*, 122 F.4th 725, 729 (8th Cir. 2024) (quoting *United States v. Castro-Gaxiola*, 479 F.3d 579, 581 (8th Cir. 2007)). So, evidence consisting "primarily of testimony from other members of the conspiracy may suffice to establish [Cannon's] guilt." *United States v. Milk*, 66 F.4th 1121, 1135 (8th Cir. 2023) (quoting *United States v. Conway*, 754 F.3d 580, 587 (8th Cir. 2014)).

Here, Cannon's co-conspirators testified at length about his involvement in the conspiracy. AP testified she obtained all the methamphetamine she sold to MS during the controlled buys from Cannon. Three witnesses and co-conspirators identified Cannon as a methamphetamine source. What's more, Cannon admitted to officers following his arrest that he had been dealing with AP for approximately a year and sold AP methamphetamine before the third controlled buy. Officers testified they observed Cannon outside AP's residence during each controlled buy and took photos depicting Cannon outside AP's residence during the second and third controlled buys.

Accepting the jury's credibility determinations and viewing the evidence in the light most favorable to the verdict, there is sufficient evidence to find Cannon guilty beyond a reasonable doubt of conspiracy to distribute methamphetamine and distribution and aiding and abetting the distribution of methamphetamine.[4]

### D. Ineffective Assistance of Counsel

Finally, Cannon claims he received ineffective assistance of counsel because his trial counsel did not move to suppress some of Cannon's verbal admissions and failed to strike two jurors who were related by marriage. As Cannon concedes, ineffective assistance of counsel claims are generally raised by motion under 28 U.S.C. § 2255 rather than on direct appeal. *See United States v. Frommelt*, 971 F.3d 823, 830 (8th Cir. 2020). Indeed, we will only review ineffective assistance of counsel claims on direct appeal "where the record has been fully developed" in the district court, "where not to act would amount to a plain miscarriage of justice, or where counsel's error is readily apparent." *United States v. Watkins*, 127 F.4th 1142, 1145 (8th Cir. 2025) (quoting *United States v. Ramirez-Hernandez*, 449 F.3d 824, 827 (8th Cir. 2006)). None of these circumstances are applicable here, so we decline to review the merits of Cannon's ineffective assistance of counsel claim.

### III. Conclusion

For the foregoing reasons, we affirm.

———————————————

---

[4]To the extent Cannon appeals the district court's denial of his motion for a new trial, we find the district court did not abuse its discretion. *See United States v. Dowty*, 964 F.3d 703, 708 (8th Cir. 2020) (standard of review) ("New trial motions 'based on the weight of the evidence are generally disfavored.'") (quoting *United States v. Camacho*, 555 F.3d 695, 705 (8th Cir. 2009)).